THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Petitioner, *v.* NEW YORK TELEPHONE COMPANY and Others, Defendants.

Supreme Court, Special Term, Albany County, October 19, 1940.

*Gay H. Brown, Counsel to Public Service Commission [John T. Ryan, Lawrence J. Olmstead* and *Sherman C. Ward* of counsel], for the petitioner.

*Charles T. Russell* [*Edward L. Blackman, Ralph W. Brown* and *Paul H. Burns* of counsel], for the New York Telephone Company.

*Campbell & Boland* [*Charles J. Campbell* of counsel], for the Hotel Roosevelt, Inc.

*Bertram L. Kraus*, for the Bowman Biltmore Hotels Corporation.

*Hall, Cunningham, Jackson & Haywood*, for the Southworth Management Corporation.

*Newman & Bisco* [*David Barnett* of counsel], for the New York Hotel Corporation, *amicus curiæ*.

BERGAN, J. In pursuance of an order of the Public Service Commission the defendant New York Telephone Company has filed tariff schedules fixing the rates that hotels may charge their guests for public telephone service. The schedules allow surcharges to be made by the hotels to their guests above the common rates for public telephone service. The hotels are constituted by the tariffs as the agents of the telephone company in rendering this service. Certain hotels regard the enumerated surcharges inadequate. They deny the power of the Commission to order the tariffs filed and they assert that they are not bound by such tariffs in surcharging their guests.

The Commission has instituted this proceeding in pursuance of section 103 of the Public Service Law against the telephone company to enforce the tariffs as filed. The telephone company moved to add the dissenting hotels as parties. That motion was granted (174 Misc. 517). Upon the trial the essential facts are stipulated.

It is the free concession of those of all the divergent points of view in this case that the hotels are not public utilities; that their internal affairs are not subject to the regulatory powers of the Public Service Commission. The hotels do, however, sell public telephone service to their guests, and they sell it at a premium above the common rate. Concerning this fact as an actual and regular practice there is no dispute in this case.

Whether public telephone service shall be sold at all by a business corporation or private individual is a question well within the regulatory power of the Commission to determine. (Public Service Law, art. 5.) The sale of such service is closely integrated with the general public interest necessarily involved in the assumption of legislative control over the methods and rates of public utilities. It is, indeed, a rule of quite general application that telephone service is not to be resold by the subscriber. If, in the judgment of the Commission, the public service would be promoted by requiring that service in this field should be sold only directly by the

utility itself and not at all by subscribers, its power in this direction would be undoubted.

If it had no such power, the utility could, by wholesaling its service to private enterprises, which were themselves beyond the pale of public regulation, effectively destroy a rate structure and a frame of regulation designed, in the view of the Legislature, to promote equal public utility service in the community as a whole.

The power thus to prohibit implies the power to condition a permission. The hotels are allowed to sell a public utility service furnished by the telephone company. They are allowed to surcharge the users of that service. The service as thus sold remains a public utility service. It has value only because there is offered as part of it the facilities of a public monoply with its franchises and rights all closely affected by public sanction and permission.

The surcharge for the utility service is, when permitted, an integral part of the rate for that service. It should be commensurate with the utility service rendered, and it is within the jurisdiction of the Commission to determine what it shall be.

The hotels contend that they are merely subscribers to the telephone company's service; that they perform, at some considerable expense to themselves, additional and special services for their guests in connection with telephone calls; that this is not public utility service and hence the charges they make for telephone service above that allowed by the tariffs are their own concern and are not subject to the regulation of the Commission. The difficulty with this argument is that the service they sell is a utility service. It is sold as such. It is only a small part in the totality of investment and technical skill and equipment required to complete the service beyond the hotel switchboard.

Small though it is, it remains a part of such service and the charge that shall be made for public telephone service in its entirety from inception to completion is a matter within the regulatory powers of the Commission. The hotels may not, in thus selling utility service, isolate themselves behind their own walls and beyond the power of regulation of the rates they may charge.

This, in effect, was the determination of the Commission twenty years ago in *Connolly* v. *Burleson* (P. U. R. 1920C, 243). The decision was followed in principle and by reference by the Supreme Court of Wisconsin in 1930 in *Hotel Pfister, Inc.*, v. *Wisconsin Telephone Co.* (203 Wis. 20; 233 N. W. 617). Its principle has been followed by other regulatory bodies. (See, as examples, in Arkansas, *Matter of Hotel Marion Co.*, P. U. R. 1920D, 466; *Jefferson Hotel Co.* v. *Southwestern Bell Telephone Co.*, 15 P. U. R. [N. S.] 265.)

The tariff of the telephone company which the Commission now seeks to enforce establishes the hotels as agents of the company " in rendering telephone service to their guests." The hotels and the telephone company seem apprehensive that there may lie hidden in this relationship implications of far-reaching character. The law of agency is cited with emphasis upon the mutuality required in its inception and the general effects of the relationship. But all agencies are not plenary in the delegated powers given and accepted. This one is sharply delimited in scope by the tariff that creates it.

It imposes no broader undertaking upon the hotels than to see to it that the tariff is carried out. Beyond that I do not understand that the undertaking of the telephone company is enlarged nor the free powers of the hotels constrained. This would be the reciprocal obligation of the utility and the subscribing hotel in any event if the tariff is valid and binding.

If hotels want to sell public telephone service to their guests, they accept a limited agency of the utility company to perform this essentially public utility service in pursuance of the requirements of the tariff. That is the measure of the compulsion. If they do not want to accept this condition of the tariff they need not undertake to sell the public telephone service. The agency provision is valid, I think, but is probably unnecessary. Its inclusion in the tariff does not impair the general validity of the tariff, nor its enforcement under the prayer for relief in this proceeding.

The hotels contend that the tariff is confiscatory as to them; that the cost of plant and services required to connect their guests with outside calls greatly exceeds the return allowed them above the amounts paid the telephone company. The rates, however, carry no compulsion to give service. Confiscation is usually to be asserted only when service must be given at the required rate. The hotels may sell telephone service or not, as they choose. Like other services provided by a hotel, it may not be profitable when isolated, but to some extent must be treated as part of the conveniences which enter into hotel accommodation and are reflected in the cost to the guest.

This fusing of services makes it impossible, from this record at least, to segregate the cost entirely chargeable to outside telephone service from the general cost of hotel accommodation. Perhaps even after the fullest sort of study is made, resort may have to be had to some arbitrary point between the cost of hotel and utility service to fix a fair surcharge for the utility service, if the present tariff is inadequate.

This may most adequately be done in the pending proceeding before the Commission. A sufficient showing has not been made

here to render the plea of confiscation available as a defense to this proceeding. It may be noted in this connection that while the hotel provides only a slight part of the total service and equipment required in completing a local call it is allowed under the tariff over sixty per cent of the total charge to the consumer on most local calls, a percentage dependent upon the total number of calls made monthly from the hotel.

In the field of long distance calls, the utility gauges the tariff on a scale guided by the distance involved, since distance requires a wider use of public utility facilities and services. The hotels, upon some theory not made fully apparent here, seem to feel that distance somehow entitles them to more money for their services upon a scale based upon a percentage of the utility's charge.

The hotels undoubtedly have the right to charge their guests any amount they please for hotel services or for secretarial services generally, even if these involve reaching other parties by telephone. These matters are not the concern of the Commission. But since the Commission has jurisdiction to order this tariff and since the hotels are bound by it in accepting telephone service, this additional " secretarial service " cannot be charged as telephone service moving over public utility lines. For that service the tariff only may be charged.

Under the facts here shown the Commission is entitled to the order sought, the execution of which is stayed for a period of thirty days after notice of entry.

The papers used upon this application may be obtained by the petitioner at this office for distribution to the proper parties.