THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK (STATE DIVISION, DEPARTMENT OF PUBLIC SERVICE), Respondent, *v.* NEW YORK TELEPHONE COMPANY, Defendant, Appellant, and BOWMAN BILTMORE HOTELS CORPORATION, HOTEL ROOSEVELT, INC., and SOUTHWORTH MANAGEMENT CORP., Appellants, and RUDOLPH LELLBACH and MAX KOERFER, Doing Business under the Firm Name and Style of THE NEW CONTINENTAL HOTEL, and Others, Respondents, Joined as Parties to This Proceeding Pursuant to Order of the Supreme Court Dated the 27th Day of May, 1940.*

Third Department, July 2, 1941.

*Bertram L. Kraus,* for the appellant Bowman Biltmore Hotels Corporation.

*Campbell & Boland* [*Charles J. Campbell* of counsel], for the appellant Hotel Roosevelt, Inc.

*Affg. 175 Misc. 128.

*Charles T. Russell [Edward L. Blackman, Ralph W. Brown, Stephen H. Fletcher* and *Edward F. Snydstrup* of counsel], for the appellant New York Telephone Company.

*Hall, Cunningham, Jackson & Haywood [Francis G. Hoyt* of counsel], for the appellant Southworth Management Corp.

*Gay H. Brown, Counsel for the Public Service Commission [John T. Ryan* of counsel], for the respondent.

*Franklin A. Schriver,* for the respondents Rudolph Lellbach and Max Koerfer, doing business under the firm name and style of The New Continental Hotel.

*Newman & Bisco [David Barnett* of counsel], for The New Yorker Hotel Corporation, *amicus curiæ.*

FOSTER, J. The judgment and order appealed from subject appellants to these directions: (a) The New York Telephone Company and the defendant hotels are restrained from making charges for intrastate telephone calls above or below the rates provided for in the tariff schedule filed with the Public Service Commission; (b) the New York Telephone Company is ordered to forthwith enforce the terms and conditions of such tariff schedules. The proceeding which culminated in this judgment and order was instituted by petition on the part of the Public Service Commission pursuant to section 103 of the Public Service Law. As the foregoing indicates, the chief question at issue is whether hotels may charge for service in connection with intrastate telephone calls in excess of or below the rate specified in the tariff schedules. Coupled with this is the question of whether hotels may be designated as the agents of the telephone company in so far as they furnish telephone service. The pertinent facts are not in dispute.

All of the equipment used for telephone service by each hotel involved is owned and maintained by the telephone company. Generally this equipment consists of a switchboard, trunk lines between the switchboard and the company's central office, wires to and extension telephones in guest rooms, and in some cases additional special equipment. The switchboard in each hotel provides the means by which extension lines from guest rooms may be connected with one another or to trunk lines leading to the telephone company's central office. Each hotel pays a rental charge for the use of this equipment. Switchboard operators in each hotel are employees thereof and paid by the hotel, and also those persons within a hotel who are engaged in accounting, billing and collection work in connection with telephone calls made by guests to points outside. No charge is made for incoming calls or between points within a hotel.

The tariff schedules as filed by the telephone company specify that each hotel shall charge and collect ten cents for each local call, and of this amount the proof indicates that the telephone company receives three and three-fourths cents. Surcharges for toll messages are specified as follows: Five cents for any toll call for which the regular charge does not exceed fifty cents; and ten cents where the common toll charge is over fifty cents. In actual practice one group of hotels have been making a charge of from ten to fifty cents for each toll call, depending upon the amount charged by the telephone company. Another group have made charges for toll calls at less than the rates specified in the tariff schedules.

These hotels which make an overcharge justify the practice on the ground that this charge is for hotel service only and not subject to regulation by the Public Service Commission. They also allege that the tariff schedules sought to be enforced are confiscatory as to them. The telephone company says in effect that it undertakes only to furnish exchange and extension facilities to hotel subscribers, and that it has no concern with a hotel service charge unless it is represented to be a public telephone charge. Both the telephone company and the hotels contend that the Public Service Commission has no power to compel and direct an agency relationship between them. The Commission asserts that the tariff schedules, until altered in a proper proceeding, are valid and must control; and also, if hotels are to be permitted to charge anything for telephone service, they must necessarily do so in the capacity of agents for the telephone company whose facilities are used in furnishing outside service.

The additional services which hotels claim to provide in connection with telephone messages, beyond those found in public booths, may include these: Ascertainment by the hotel switchboard operator of the telephone number when a guest places an outside call by name; repeated attempts by the hotel switchboard operator to complete a call for a guest in cases where upon the first attempt the call line was busy or did not answer; the hotel switchboard operator may transmit or receive a telephone message for a guest in his absence and advise the guest upon his return of telephone messages received in his behalf; a guest may be paged in public rooms in an attempt to complete an incoming telephone call when the guest cannot be reached at his room telephone; hotel guests are not required to pay for each call at the time the call is made, but rather are billed for their telephone calls by the hotel along with the hotel's bill to the guest for his room and other service. Doubtless there may be others. One difficulty with this

argument is at once apparent. It must happen frequently that a guest knows the number he wants, and the connection is made on the first attempt. In such an instance there is no difference between the service furnished by the hotel and that which would be received in a public booth, and yet the so-called service charge is made just the same. Whether this charge is called a telephone charge or a hotel service charge it is invariably made whenever a guest makes an outside call, and it is not made unless this takes place. We think the distinction sought to be made as to the type of charge is somewhat nebulous, but granting that some distinction exists and that extra service is provided in many cases the main purpose is to furnish the public telephone service.

For a period of some twenty years there has existed an administrative construction of the Public Service Commission to the effect that telephone service rendered in hotel guest rooms is utility service, and that the rates therefor may be regulated. (*Connolly v. Burleson*, P. U. R. 1920, C-243.) While not conclusive an administrative ruling of long standing is entitled to considerable weight even when the subject is not free from doubt. (*United States v. Chicago, North Shore & Milwaukee R. R. Co.*, 288 U. S. 1.) This ruling has been adopted in principle in other jurisdictions and by other regulatory bodies. (*Hotel Pfister v. Wisconsin Telephone Co.*, 203 Wis. 20; 233 N. W. 617; *Matter of Hotel Marion Co.*, P. U. R. 1920, D-466; *Jefferson Hotel Co. v. Southwestern Bell Telephone Co.*, 15 P. U. R. [N. S.] 265.) We think it is supported by logic and practical necessity if the purposes of the Public Service Law are to be effectuated. A telephone within a hotel, used to furnish service in connection with outside calls, must be considered as an extension of the telephone company's general system and subject to regulation; otherwise the public will be subjected to a variety of rates concocted under the guise of hotel service and completely unregulated. To avoid such an evil is one of the main purposes of the statute. The fact that outside service is involved in this case distinguishes it from the case of *Chesapeake & Potomac Telephone Co. v. Manning* (186 U. S. 238), where only intratelephone service was involved. The tax cases cited by appellants may also be distinguished on the basis that they dealt with the sale of a commodity consumed on the premises, and the only persons affected by the sale were the owners of the building and the tenants who used the commodity. (*Matter of 320 W. 37th Street, Inc., v. McGoldrick*, 281 N. Y. 132; *Merchants Refrigerating Co. v. Taylor*, 275 id. 113.)

In reaching the foregoing conclusion we cannot be concerned with whether hotels make a loss or profit. Neither contingency can alter, or indeed have any effect upon, the principles to be applied.

The claim of confiscation as made by some hotels we deem entirely irrelevant. There is no appeal from any order of the Commission before us, and in any event, confiscation does not take place until there is a destruction or impairment of a property right. A hotel acquires no property right in utility service which it is not required by law to furnish. Nor can we consider whether the tariff schedules are reasonable or not. Such an issue must be tried elsewhere before we may review it. (*Matter of Leitner* v. *New York Telephone Co.*, 277 N. Y. 180; *Purcell* v. *New York Central R. R. Co.*, 268 id. 164.) The proof indicates that a proceeding involving this issue is now under way before the Public Service Commission.

It is affirmatively required by statute that all telephone companies establish and file with the Public Service Commission schedules showing all rates, rentals and charges to be made for service of each and every kind by and over its lines in this State. (Public Service Law, § 92.) The New York Telephone Company has filed its tariff schedules with relation to hotel service. They are presumed to be reasonable, and must be attacked in the first instance before the Public Service Commission. (*Murray* v. *New York Telephone Company*, 170 App. Div. 17; affd., 226 N. Y. 590.) These schedules designate hotel subscribers as agents of the telephone company in rendering telephone service to their guests. The necessity for this arises from the very nature of the service furnished and the relationship which exists between the parties furnishing the service and the public. The hotels are not public utilities and have no independent right for furnishing a public utility service. They can only do so in the capacity of agents for the telephone company whose facilities are used to furnish such service. The same sort of provision as to agency has been approved in the present tariff schedules of the telephone company relating to public telephones at locations such as cigar stores, drug stores and other establishments, except where no arrangement is made for supervision. (*Matter of Leitner* v. *New York Telephone Co.*, *supra.*) A similar principle has been applied by regulatory bodies in other States (*Matter of Hotel Telephone Service and Rates*, P. U. R. 1919, A-190; *Matter of Hotel Marion Co.*, *supra*; *Jefferson Hotel Co.* v. *Southwestern Bell Telephone Co.*, *supra.*) In addition to the compulsion engendered by the very nature of the situation these authorities furnish respectable support for the type of agency directed. Its limitations are obvious, for the undertaking imposed is merely to carry out the tariff schedules, an obligation which would exist in any event if such schedules are valid. As pointed out before, they are presumed to be valid until changed in a proper proceeding, and in this connection it may be emphasized again that

no order of the Public Service Commission is under review in this proceeding.

The judgment and order appealed from should be affirmed, with costs.

CRAPSER, BLISS and HEFFERNAN, JJ., concur; HILL, P. J., dissents, in an opinion, and votes to modify the judgment.

HILL, P. J. (dissenting). The order and judgment should be modified to permit a hotel to make a separate charge in addition to the rates and surcharges fixed by the Public Service Commission, the regulated charge being compensation to the hotel to offset the expenses incurred for the maintenance of the private branch exchange, and the rates charged to the hotels for the telephone installation in the rooms. The additional charge is for the personal service and secretarial assistance given to the guest in connection with his use of the public utility facilities. The services for which the extra and separate charge should be permitted are in part listed in finding fifteen of the decision. The hotel furnishes these as secretarial and personal aid to the guests. It should not be required to assume the costs. The alternative would be a higher rate per room, and a guest whose business does not require personal aid in connection with the use of a telephone should not be required to pay an additional price for his room in order to fairly compensate the hotel for the services which it furnishes to another guest desiring aid. Under present financial conditions a hotel corporation or management cannot absorb this cost which previously it has passed on to the guests who have used the telephone services in connection with intrastate calls. The attempt by the Public Service Commission to make those who own or operate hotels agents of the telephone company or requiring the telephone company to accept the services of unwanted agents, is *ultra vires*.

I favor a modification of the judgment.

Judgment and order affirmed, with costs.