## UNITED STATES v. AMERICAN TELEPHONE & TELEGRAPH CO. et al.

District Court, S. D. New York.
Sept. 6, 1944.

James B. M. McNally, U. S. Atty., of New York City (Marvin M. Notkins, Asst. U. S. Atty., of New York City, of counsel), for the Government.

Frederick L. Wheeler, of New York City (Samuel H. Hellenbrand, of New York City, of counsel), for defendants New York State Realty & Terminal Co. and Realty Hotel, Inc.

McNamara & Seymour, of New York City (Stuart McNamara and U. S. Grant, both of New York City, of counsel), for defendant Hotel Waldorf-Astoria.

Newman & Bisco, of New York City (Gerard I. Walters, of New York City, of counsel), for defendant Hotel New Yorker.

T. Brooke Price, John T. Quisenberry, and Edmund S. Hawley, all of New York

City, for defendant American Telephone & Telegraph Co.

Lord, Day & Lord, of New York City (Parker McCollester and Herbert Brownell, Jr., both of New York City, of counsel), for defendants, Hotel Astor, Inc., and others.

Ralph W. Brown, of New York City (Frank A. Fritz and John Machan, both of New York City, of counsel), for defendant New York Telephone Co.

BRENNAN, District Judge.

This action, instituted upon the request of the Federal Communications Commission, hereinafter referred to as "the F. C. C.", and prosecuted under the direction of the Attorney General of the United States, pursuant to Section 401(c) of the Communications Act of 1934, as amended, 47 U.S.C.A. § 401(c), seeks to enjoin the claimed violation by the defendants of Section 203 of the Communications Act, 47 U.S.C.A. § 203.

The defendants, the American Telephone & Telegraph Company and the New York Telephone Company, are corporations engaged in interstate and foreign communications by wire within the meaning of the said Federal Communications Act of 1934, as amended.

The remaining defendants, about thirty in number, are individuals, partnerships and corporations engaged in the operation of hotels, all located within the City of New York, and may be referred to generally as "hotel companies". They are named as defendants in this action by virtue of the provisions of 47 U.S.C.A. § 411; it being claimed that the practices in use by them in the matter of charges made to hotel guests in connection with the making of interstate telephone calls by such guests from within the hotel premises constitute violations of a tariff filed by the New York Telephone Company with the F.C.C. on February 11, 1944, which tariff was concurred in by the defendant, the American Telephone & Telegraph Company, and which by its terms became effective on February 15, 1944.

The tariff above referred to, insofar as it is applicable here, provides as follows: "Message toll telephone service is furnished to hotels, apartment houses and clubs upon the condition that use of the service by guests, tenants members or others shall not be made subject to any charge by the hotel, apartment house or club in addition to the message toll charges of the Telephone Company as set forth in this tariff."

The facts are not seriously in dispute. The differences in this action arise by reason of the conclusions to be drawn from the facts and the application of the law applicable thereto.

The pertinent facts as to the hotels' interest in and connection with the telephone service rendered to guests may be generally summarized as follows:

The guest rooms of the several hotels are provided with the necessary equipment so that guests may communicate by means thereof with other guest rooms within the hotel, or with facilities afforded by the hotel for the comfort and convenience of the guests, such as valet, room and management service. The same facilities also enable the guest to communicate with persons outside of the hotel structure, and may afford either intrastate or interstate means of communication. The equipment necessary for this service is generally owned by the Telephone Company, maintained and inspected by it, and is made available upon the written request of the several hotels which ordinarily pay a monthly rental charge for the equipment used. The main difference between the means and methods used in providing telephone service to a personal subscriber and to defendant hotels is that in the case of the personal subscriber the wires of the telephone company convey the message from the transmitting instrument to the receiving instrument without action by the subscriber other than the ordinary physical action required in receiving or transmitting the message. In the case of the hotels, there is installed therein a private branch exchange, referred to as "PBX", by means of which a connection is made by the operator between the outside telephone trunk lines and the extension lines running from the PBX to the several guest rooms or hotel facilities. The PBX board is installed by the telephone company; it is operated by hotel employees who are under no control of the telephone company, but are instructed by it in the performance of their duties.

In actual practice the furnishing of telephone service by the hotel companies to their guests involves a large capital outlay and continuing "overhead expense", the

details of which it is not necessary to describe.

For some years the hotels have adopted methods intended to reimburse them, in part at least, for such outlay and expense, which methods are the bases of the plaintiff's claim for relief herein.

When a guest makes an interstate telephone call from his hotel room, the ordinary procedure requires that he, by using the room telephone, attract the attention of the PBX operator to whom he gives the name, address or telephone number of the person with whom he wishes to communicate. Connection is then made between the room extension and the outside trunk line. The operator, or in some instances, the guest, through the mechanism of the PBX board, transmits the information over the trunk lines of the telephone company to the telephone toll operator, and the message is completed in the ordinary manner. The PBX operator makes a notation of the name of the guest, his room number, the name, address and telephone number of the person called, and the time length of the call. Through the hotel clerical force, the charge made by the telephone company, according to its filed tariff, is computed; the tax thereon is computed, and an additional charge, variously referred to as "service charge" or "surcharge", is added. Either the individual items or the total charge is noted upon the account of the guest, and he is expected and required to make payment thereof in the due course of business.

It is the claim of the plaintiff that the above practice constitutes a violation not only of the tariff referred to above, but of the Communications Act itself, even without the supplement of the particular tariff.

The surcharge or service charge is generally based upon the amount of the toll charge made by the telephone company, plus the tax, and is graduated accordingly. It has little or no relationship to the service rendered by the hotels in connection with the particular call. No charge is made for hotel inter-communication or incoming local or interstate calls, although the service rendered by the hotels and equipment used is substantially the same as in the case of outgoing interstate calls. A charge is made for outgoing intrastate calls, such charge being in accordance with the provisions of the tariff filed with the New York State Public Service Commission.

That the hotels furnish convenient telephone service to their guests at considerable expense may be conceded, and they urge that business experience dictates that it is both convenient and equitable that the charge therefor be borne in part by the guest using his room phone for interstate telephone communication. It is not necessary to agree or to disagree with such contention, if the tariff involved is valid, and the practice constitutes a violation thereof, as claimed by the plaintiff.

The issues here are concise and must be approached in the light of the expressed purpose of the Communications Act. 47 U.S.C.A. § 151; Scripps-Howard Radio, Inc., v. Federal Communications Commission, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229. They involve a determination as to jurisdiction of the parties and subject matter, and the validity of the tariff. If the tariff is found to be valid, then it must be determined whether or not the defendants have violated same.

No serious question is raised as to the extent of the judicial power to review the proceedings underlying this action. Although some evidence was received which bears upon the amount of the surcharge made by the defendant hotels, it is conceded that the reasonableness of such charge is not before this Court. It is, however, urged that the nature of the services rendered by the hotels, the relationship of the interested parties, and the provisions of the Communications Act require the dismissal of the complaint as to hotels.

■ That the Communications Act contemplates the regulation of interstate wire communication from its inception to its completion is confirmed by the language of the statute and by judicial decisions. United States of America v. American Telephone & Telegraph Co. et al., decided April, 1944, District of Columbia;[1] People ex rel. Public Service Commission v. New York Telephone Co., 262 App.Div. 440, 29 N.Y.S.2d 513, affirming 175 Misc. 128, 22 N.Y.S.2d 837; Hotel Pfister, Inc., v. Wisconsin Telephone Company, 203 Wis. 20, 233 N.W. 617, 73 A.L.R. 1190.

■ The contention that wire communication within the meaning of the Communi-

---

[1] No opinion for publication.

cations Act ends at the PBX board and is not thereafter subject to the regulation is, therefore, rejected. The above statement necessarily implies a finding that this proceeding involves wire communication as defined in the Communications Act.

■ The contention that the services rendered by the hotels constitute "telephone exchange service" within the purview of the Act, and, therefore, are exempt from jurisdiction of the F.C.C., 47 U.S.C.A. § 221(b), is contradicted by the evidence when applied to the definition of "telephone exchange service" as contained in the Act, 47 U.S.C.A. § 153(r).

■ The nature of the services rendered by the hotels needs no extended discussion. The defendant hotels in substance claim that the surcharges in question are imposed for hotel and secretarial service rendered to their guests, and that, as such, they are not subject to regulation. The evidence plainly indicates that the greater portion of such service is afforded by the hotels to their guests as a matter of hotel accommodation and to meet business competition. It is not necessary to attempt to decide how much of the service rendered may be considered as hotel service. The fallacy of defendants' argument is that, regardless of the nature of the service rendered and of the cost thereof, reimbursement is sought by imposing upon interstate toll telephone service an arbitrary charge which increases the charge for such service above the limit prescribed by regulation. The fact that the amount of such charge is allocated to meet the cost of some particular hotel service rendered is not material. It is not the province of this Court to enter into the realm of hotel management. It is enough to state that public utility service may not be the subject of unregulated resale by a subscriber to balance a business deficit.

■ This brings us to the question as to the relationship between the defendant hotels and defendant telephone companies, as it is contended that the services rendered by the hotels are not subject to regulation by the F.C.C. or by the provisions of the Communications Act, unless the hotels are acting as agents of the common carrier, as in People ex rel. Public Service Commission v. New York Telephone Company, supra. There is no evidence of such agency. The hotels are subscribers for telephone service. The argu-

ment above outlined, however, is not applicable, as there is no attempt to regulate the service rendered by the hotel. Rather, the Communications Act and the tariff is applicable to the charge made for interstate wire communication. The hotels may render to their guests any service which business judgment may dictate, but they may not impose the cost thereof upon the use of a public utility service. It is true that the Communications Act refers to the carriers, but it is also true that hotels as subscribers are bound by the effective tariffs filed by the carriers. 47 U.S.C.A. § 411(a); Lowden v. Simonds, etc., Grain Co., 306 U.S. 516 at page 520, 59 S.Ct. 612, 83 L.Ed. 953.

The determination of the above issues raised in this case both at the trial and in the briefs of the parties brings us back to the consideration of the validity of the tariff, which, by its terms, became effective February 15, 1944.

The case of United States of America v. American Telephone and Telegraph Company et al., recently decided in the District Court of the United States for the District of Columbia, is similar to the instant case, except that there is raised in this case the claim that the tariff upon which the action is based is actually of no force and effect, and is invalid by reason of the fact that it constitutes a change in the regulations existing prior to February 15, 1944, on less than thirty days' notice, in violation of Section 203(b) of the Federal Communications Act.

There is no question but that it is desirable that interested parties be given notice sufficient in point of time that they may conform their business practices to any new regulation. The statute contemplates that such change be made on thirty days' notice, but the F.C.C. may in its discretion and for good cause shown modify such requirement. Modification was made in this instance after written application had been made by the telephone company for permission to file the tariff in question. The defendants strenuously urge that such application and permission were ineffective in that there was no "good cause shown" therefor. The statute is silent as to what constitutes "good cause" or as to how same must be shown to the F.C.C. before the exercise of its discretion is warranted.

■ We have here the strong presumption that the action taken by the F.C.C. was entirely legal. R. H. Stearns Co. v.

456

U. S., 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647; U. S. v. Chemical Foundation, Inc., 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131. The language of the opinion in the last cited case indicates that it is questionable whether the basis of fact on which the action of the F.C.C. rests is open to challenge.

The Court's attention is also called to the language of 47 U.S.C.A. § 203(d), and it is urged that a tariff which offends the provisions of law as claimed by the defendants may be rejected and is, therefore, void, but if such tariff is actually accepted and filed, long continued administrative construction holds that such a tariff becomes legally effective according to its terms. Such argument passes over the requirement that the statute contemplates a notice to the public before a change in the charges, etc., is made. It is not necessary to decide this question on either of the above contentions, as the record shows that in the District of Columbia an investigation as to the practice of the hotels involving service or surcharges has been conducted by the F.C.C. and while the report of its investigation and findings are not binding upon the defendants here, it is a basis upon which the discretion of the F.C.C. could be exercised. If the Washington investigation disclosed a condition which warranted the filing of a tariff affecting the hotels in the District of Columbia, certainly we can not shut our eyes to the fact that it might be advisable at least that such tariff be speedily made uniform in its application, even without specific investigation or specific findings as to the condition existing in New York City. Such action is one of the purposes of the Act.

That the application did not conform to the rules of the F.C.C. did not void action thereon, as the rules were imposed by the Commission and its action waived the requirements thereof.

The conclusion is reached that the tariff was lawfully filed, is lawful in its form and scope, and is valid.

The evidence shows that the message toll telephone service furnished to the hotels for the use of their guests has been made subject to a surcharge by the hotels. The hotels, as subscribers to the telephone service, are bound to observe the conditions upon which such service is furnished. The violations of such conditions constitute a violation of the provisions of the tariff and should be enjoined.

The facts shown on the trial lead to the conclusion that the defendant telephone companies are continuing to furnish toll telephone service, which is being made subject to a charge by the defendant hotels. While the carrier is not responsible for the action of the hotels, the furnishing of such service, in violation of the conditions imposed by the tariff, constitutes a violation thereof. It is the Court's concern to provide an effective remedy with the least possible injury to the public, and, therefore, an injunction may issue against the defendant telephone companies, enjoining them from furnishing message toll telephone service to such of the defendant hotels as continue to subject such service by its guests to any charge other than the message toll charges of the telephone company itself.

Motions made by the defendants to dismiss the complaint are denied, and the motion of plaintiff for judgment is granted in accordance with this opinion.