**SOUTHERN PACIFIC COMMUNICATIONS COMPANY, a corporation, Appellant,**

v.

**CORPORATION COMMISSION of Oklahoma, the State of Oklahoma and Southwestern Bell Telephone Company, a corporation, Appellees.**

No. 49457.

Supreme Court of Oklahoma.

Jan. 31, 1978.

As Corrected on Denial of Rehearing Nov. 3, 1978.

Charles E. Norman, Rizley, Prichard, Norman & Reed, Tulsa, Richard S. Kopf, San Francisco, Cal., Herbert E. Forrest, Steptoe & Johnson, Washington, D.C., for appellant.

Robert D. Allen, Oklahoma City, for appellee.

DOOLIN, Justice:

This is a jurisdictional problem matching intrastate regulation by the Corporation Commission of Oklahoma against interstate regulation by the Federal Communications Commission. Appellant, Southern Pacific Communications Company (Southern), as successor in interest to United Video, is a specialized common carrier with authority from Oklahoma Corporation Commission (Commission) to operate *intrastate* microwave transmission between Tulsa and Oklahoma City.[1] Southern also operates nationwide *interstate* private line telephone company services, authorized by the Federal Communications Commission (FCC). This authorization includes interstate foreign exchange services, the type services involved here.

Four Southern operated Tulsa-Oklahoma City foreign exchange circuits are challenged in this appeal. For the sake of clarity, we will describe only one. Southwestern Bell Telephone Company (Bell) had been providing five foreign exchange lines (FX) for Allstate Insurance Company between Tulsa and Oklahoma City. Bell's tariff described FX service as an exchange service furnished to a customer from an exchange other than the one in which he is located. Allstate subscribed to exchange telephone service in Tulsa even though its offices are located in Oklahoma City. This is accomplished by providing a dedicated private line channel[2] between the Allstate offices in Oklahoma City and a central office in Tulsa. Allstate is then listed in the

1. *Data Transmission Co. v. Corporation Commission*, 561 P.2d 50 (Okl.1976).

2. A dedicated line is one entirely used by a customer subscribing to it. Private line service provides the user an exclusive channel for continuous communications between two or more places without the necessity of establishing a new connection for each message. *American Telephone and Telegraph Company v. FCC*, 2 Cir., 487 F.2d 865, 868.

Tulsa directory for that locality. Anyone in Tulsa by dialing the number listed for Allstate, through a switch in the central office, automatically reaches Allstate's Oklahoma City office. In the same manner, personnel in the Allstate Oklahoma City office may dial anyone in the Tulsa exchange. The Tulsa exchange is considered the "open end" of the circuit and the office in Oklahoma City is the "closed end".

Bell provided five FX lines to Allstate on an intrastate basis charging intrastate rates. Southern offered this same FX service to Allstate, except at the Oklahoma City office, where the FX lines terminate at a PBX, Southern provided a private interstate line running to Allstate's regional office in Dallas. There are also three FX lines running from Dallas to the Oklahoma City office.

Because of this availability of a tie-in to the private line to Dallas and thus the interstate network, Southern offered the Tulsa FX lines at the FCC authorized *interstate* rates, which are substantially less than *intrastate* tariffs charged by Bell. Southern did not apply for intrastate authorization from the Commission, but advised Bell it was replacing its Tulsa-Oklahoma City FX lines and requested Bell provide the local distribution loops and access lines.

Bell then filed the present complaint with Commission, asking it to find that Southern was not authorized to provide FX service between points wholly within Oklahoma and to order it to cease and desist the offering of these services to the public, pending authorization by Commission. Southern answered, stating the services referred to in the complaint were in each instance interstate and therefore under the regulation and jurisdiction of the FCC. It denied it was offering or providing services contrary to its certificate of convenience and necessity and sought dismissal of Bell's complaint.

Immediately after the filing of Bell's complaint, Southern filed a petition for a declaratory ruling on this issue with the FCC, attaching Bell's complaint to the Commission.

After the hearing before the Commission but before it issued its order, the FCC issued a memorandum opinion and order which found Southern's services being questioned by Bell were interstate, even if capable of being used intrastate. Although the FCC order did not direct Bell to withdraw its complaint against Southern before Commission, it did state "we would hope that they abandon such unnecessary proceedings." [3]

The Commission's order, although acknowledging the FCC order, did not believe it was controlling. The Commission's order found the FX services provided by Southern with both open and closed ends within Oklahoma were intrastate and under the Commission's authority. It further found Southern held no authorization to furnish intrastate FX service and ordered it to discontinue the furnishing of such service to locations within the State of Oklahoma. Southern appeals this order of the Commission.

The exact and instant services which the Commission ordered Southern to discontinue were held to be part of the interstate private line network by the FCC decision. Whereas FCC found the facilities were *interstate* even if capable of being used *intrastate*, the Commission order found the facilities were *intrastate* even if capable of being used *interstate*. Herein the dichotomy arises. Which regulatory body's decision as to its own jurisdiction controls?

Southern, in asking us to reverse the Commission's finding of intrastate jurisdiction, asserts the FCC has pre-empted any regulation by Commission.

 Bell counters by arguing Commission's order is supported by substantial evidence and thus should be sustained. This is not the standard of review this Court applies where jurisdiction of the Commission

---

3. AT&T Interconnection with Specialized Carriers in Furnishing FX and CCSA 56 FCC2d 14, 21 (1975).

is Challenged. Jurisdiction of Commission is dependent upon the fact of the existence of *intrastate* transmission. Determination of jurisdiction is a question of law, and in reviewing an order of the Commission, this court will not accept as conclusive a finding of fact concerning a jurisdictional question, but will weigh the evidence relating thereto and make its own independent finding.[4]

FX service affords a customer in Oklahoma City the ability to subscribe to exchange telephone service in Tulsa as if physically located there. FX does this by providing what is denominated in AT & T's tariff and has been held by the FCC to be a *private line channel* between customer's premises in Oklahoma City to a central office in Tulsa. This channel is dedicated to the exclusive use of the customer.

A Tulsa user cannot dial directly to the Dallas office through Oklahoma City. The Tulsa user dials the Tulsa number which appears on the console of Allstate's PBX in Oklahoma City. The call then may be manually switched by the PBX operator in Oklahoma City to the private line going to Dallas. Only one Tulsa-Oklahoma City line at a time can be connected to the private line into Dallas. *Bell admits if each Tulsa-Oklahoma City line had an automatic switch to an Oklahoma City-Dallas line, it would consider it to be interstate.* Bell urges however that FX service is not designed as a switchable service, thus where both the open and closed ends are in Oklahoma it can only be rated as intrastate.

Southern's request from Bell for tie-in services was for interstate capability. It requested FX lines originating in Tulsa to terminate in Allstate's PBX in Oklahoma City and were to be "switchable to Dallas,

Texas, over a two-way dial repeating tie trunk". Southern argues this FX line provided wholly within one state, but capable of switching to a private line provided between two states is interstate service, assuming the calling party at the open end of the line has the *capability* and the *need* of conversing with a party in another state via a switching arrangement.

Southern claims the criteria is not whether each FX line can be automatically switched interstate, but whether there exists the capability to tie-in to the interstate network if customer has such a bona-fide requirement.

The FCC decision was based on pleadings and briefs submitted by Southern and by Southwestern Bell as well as other interested telephone companies. The decision found the facts were not in dispute so there was no need for an evidentiary hearing. The FCC felt the most efficient procedure was for it to rule on the question of its own jurisdiction as a guidance to the states.

The FCC found Southern's facilities located within the State of Oklahoma were designed to inter-connect with one of several interstate FX lines. The facilities therefore constitute *"part of dedicated interstate private line networks which are clearly identifiable as carrying communications of only the customer.* They are distinguishable from the non-dedicated public switched telephone network in which the facilities are intended to be used by all Bell System customers interchangeably for interstate or intrastate calls."

The FCC cited its decision in *In the Matter of Telerent Leasing Corporation*, 45 FCC2d 204, 217–220 [*North Carolina Utili-*

---

4. Art. 9 § 20 Constitution of State of Oklahoma provides:

 "The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence. Upon review, the Supreme Court shall enter judgment, either affirming or reversing the order of the Commission appealed from. *****".

 Also see *Perma-Stone Oklahoma City Co. v. Oklahoma Employment Securities Commission*, 278 P.2d 543 (Okl.1955).

ties Commission v. FCC, 537 F.2d 787 (4th Cir. 1976) cert. denied 429 U.S. 1027, 97 S.Ct. 651, 50 L.Ed.2d 631] stating:

"that Congressional intent in the Communications Act to make available a unified, nationwide communications service would be frustrated if each of the State and local jurisdictions could impose its own terms and conditions for the interconnection with the switched telephone network of equipment which is to be used for both interstate and intrastate communications services. As a result, *if the facilities* in the present case are interstate, even if they are capable of being utilized for intrastate services as well, they are subject to terms and conditions which this Commission imposes."

The FCC also cited *MCI Communications Corp. v. American Telephone and Telegraph Co.*, 369 F.Supp. 1004 (E.D.Pa.1974)[5] which stated the physical location of facilities is not determinative of whether they are interstate or intrastate for regulatory purposes. The FCC further quoted from that district court decision at p. 1029 as follows:

"The Courts have held that transmission facilities located entirely within one state are not thereby immune from the Commission regulation if those facilities are used in an interstate transmission network. *United States v. Southwestern Cable Co.*, 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968); *Ward v. Northern Ohio Telephone Company*, 300 F.2d 816 (6th Cir.), cert. denied, 371 U.S. 820, 83 S.Ct. 37, 9 L.Ed.2d 61 (1962); *California Interstate Telephone Co. v. FCC*, 117 U.S. App.D.C. 255, 328 F.2d 556 (1964). It has also been held that Commission regulation of interstate communications does not end with the local switchboard, but continues to the transmission's ultimate destination. *United States v. American Telephone and Telegraph Co.*, 57 F.Supp. 451 (S.D.N.Y.1944), aff'd sub nom. *Hotel Astor, Inc. v. United States*, 325 U.S. 837, 65 S.Ct. 1401, 89 L.Ed. 1964 (1945). And when a local transmission facility is included in an interstate transmission network, the regulation of the interstate uses of that facility lies exclusively with the FCC. *Ivy Broadcasting Company v. AT&T*, 391 F.2d 486 (2d Cir. 1968)."

The order of the Commission stated it had no quarrel with these conclusions of the FCC regarding the interstate nature of FX services *if* the Oklahoma exchange service is incorporated as *an integral* part of an interstate service. However, the Commission believed there were factual questions left open by the FCC's opinion. The Commission then determined these fact questions in favor of state regulation and ordered the services terminated.

■ In considering Southern's application for a declaratory ruling regarding its policies reference these specific services, the FCC found the lines in question to be interstate and thus subject to its jurisdiction, not that of the state authority.[6] An administrative agency has the right to determine its own jurisdiction under its enabling act, and until such time as the federal court reverses, it should control.

In *Data Transmission Co. v. Corporation Commission*, 561 P.2d 50 (Okl.1976) we held we could not ignore decisions of the FCC but that they were not binding on this Court. In that case, however, there was no jurisdictional fact question raised and no question whether the FCC had exercised pre-emptive jurisdiction over the service to be provided. Further in *Data* there was *no dispute as to the intrastate nature of the services.*

■ The FCC regularly exercised its authority by issuing its ruling pursuant to Southern's request for a declaratory judgment. Unlike courts, federal administrative agencies are not restricted to the adju-

---

5. Vacated on other grounds that District Court should have deferred to FCC primary jurisdiction at 496 F.2d 214 (3d Cir. 1974).

6. *AT & T Interconnection with Specialized Carriers in Furnishing FX and CCSA* 56 FCC2d 14

(1975) affirmed. *People of State of California v. FCC*, 567 F.2d 84 (D.C.Cir. 1974) cert. denied 434 U.S. 1010, 98 S.Ct. 721, 54 L.Ed.2d 753.

dication of matters which are cases or controversies but may issue declaratory rulings. The Communications Act of 1934[7] does not sanction state regulation where it encroaches upon FCC's statutory authority.[8]

Federal regulation may oust the state from jurisdiction over services it determines to be interstate. State regulation may not encroach upon the FCC's statutory authority. The FCC's declaration of its primary authority over these services is a proper and reasonable assertion of jurisdiction conferred by Congress. Where state regulation conflicts and compliance with both federal and state regulatory authorities is not possible, state regulation is pre-empted.[9]

Bell tacitly agrees with the pre-emption theory but contends the facts considered by the FCC and its ruling do not accurately describe the situation involved.

In *Bell Telephone Co. of Pennsylvania v. FCC*, 503 F.2d 1250 (3rd Cir. 1974), cert. denied 422 U.S. 1026, 95 S.Ct. 2620, 45 L.Ed.2d 684 (1975), the federal court upheld an FCC determination that *interstate services of the specialized common carriers included physically intrastate communication channels which are connected at a common control switching arrangement (CCSA) which automatically switches intrastate calls to a dedicated interstate private line network. In the Matter of Bell System Tariff Offerings of Local Distribution Facilities for use by other common carriers* 46 FCC2d 413, 416 (1974). Bell suggests this is only applicable where each intrastate line is equipped with a switching arrangement that automatically switches the call interstate. This, Bell contends, does not include the situation here where there are five FX lines with only one private line available for

connection interstate. This, it submits, was not considered by the FCC.

The FCC order recognized the facilities were physically located within one state, and designed to extend through a "switch, interstate, FX or common control switching arrangement" from the interstate terminal point to another point in the state. The FCC order stated that Southern was providing FX lines between Tulsa and Oklahoma City, connected by switch to Southern's interstate FX lines into Texas. In reality the line into Texas was a private line but this does not change the interstate nature of the service which the FCC pre-empted. The intent of the FCC order was to cover the same existing facilities.

There is no question but that FX service is private line service as contemplated by *Bell Telephone Co. of Pennsylvania v. FCC*, supra. The FCC defines FX as a private line service that is partially switched. A CCSA referred to in the Pennsylvania case is a private line system for linking various offices of a large company through large switches on a local telephone company's premises instead of through PBX switches on the customer's premises.[10]

Although FX services are available to the general public at the Tulsa open end, this is accomplished by connecting the local loop to a private line running from Tulsa to Oklahoma City. Allstate's PBX operator can then connect this private line to the private line running from Oklahoma City to Dallas. Whether these two lines are automatically connected through a CCSA or must be manually connected at the switchboard by a "person" should not be the determining factor as to the intrastate or interstate character of the line. The FCC found the facilities were part of a dedicated interstate private line network, clearly identifiable as

---

7. 47 U.S.C.A. § 151 et seq.

8. *North Carolina Utilities Commission v. F. C. C.*, 537 F.2d 787 (4th Cir. 1976) cert. denied 429 U.S. 1027, 97 S.Ct. 651, 50 L.Ed.2d 631 (1976).

9. In a somewhat different context the court in *Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977) stated "One of the basic tenets in application of Supremacy Clause is that states have no power

to determine the extent of federal authority". Also see *National Association of Regulatory Utility Commissions v. FCC*, 537 F.2d 787 (4th Cir. 1976); *Federal Power Commission v. Corporation Commission of State of Oklahoma*, 362 F.Supp. 522 (W.D.Okl.1973).

10. See *Bell Telephone Company of Pennsylvania*, FCC, 503 F.2d 1250, p. 1254 (3d Cir. 1974).

carrying communications of only the customer.

 FCC authority to regulate equipment used for both interstate and local communications is paramount. This is true even where equipment is used predominately for intrastate calls.[11] Where a local transmission facility is included in an interstate transmission network, the regulation of the interstate uses lies exclusively with FCC. Wire communication that is subject to FCC control does not end at the PBX board.[12]

47 U.S.C. § 151 provides a broad mandate for the FCC.[13] It states the Communications Act was passed "for the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nationwide, and world wide wire and radio communications service with adequate facilities *at reasonable charges* . . . ." (Emphasis supplied).

We agree with the circuit court in *Puerto Rico Telephone Company v. FCC*, 553 F.2d 694 (1st Cir. 1977), which stated, "We think that the clear import of the Communications Act, as it has been construed by the FCC and by the courts for many years, is that no matter how frequently or infrequently a subscriber places interstate calls, he is entitled to have the conditions placed on access to the interstate telephone system measured against federal standards of reasonableness under § 201 (of the Communications Act)."

As stated by the FCC order and as suggested by witnesses for Southern, the *capability* for *interstate* transmission and a *bona fide requirement* for *interstate* transmission should be the determining criteria. A customer's representation of a need for interstate communications then become a mate-

rial fact in determining the character of the requested transmission as inter or intra state, and thus the rates to be charged under FCC or Commission authorized tariffs.

REVERSED.

LAVENDER, V. C. J., and WILLIAMS, BERRY, BARNES and Hargrove, JJ., concur.

IRWIN and SIMMS, JJ., dissent.

---

**11.** *Puerto Rico Telephone Co. v. FCC*, 553 F.2d 694 (1st Cir. 1977).

**12.** *United States v. American Telephone & Telegraph Co.*, 57 F.Supp. 451, 454 (S.D.N.Y. 1944); Also see *Idaho Microwave, Inc. v. FCC*, 122 U.S.App.D.C. 253, 352 F.2d 729 (1965); *Hamilton County Telephone Company v.*

*Northwestern Bell Telephone Co.*, 140 N.W.2d 834 (Neb.1966).

**13.** See *United States v. Southwestern Cable Co.*, 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968).