238 F.2d 266
 99 U.S.App.D.C. 190, 15 P.U.R.3d 467
 HUSH-A-PHONE CORPORATION and Harry C. Tuttle, Petitioners,
v.
UNITED STATES of America and Federal Communications
Commission, Respondents, American Telephone and
Telegraph Company et al., and United
States Independent Telephone
Association, Intervenors.
 No. 13175.
 United States Court of Appeals District of Columbia Circuit.
 Argued Oct. 4, 1956.
Decided Nov. 8, 1956.
 
 [99 U.S.App.D.C. 191] Mr. Herbert J. Miller, Jr., Washington, D.C., with whom Mr, Kelly E. Griffith, Washington, D.C., was on the brief, for petitioners.
 Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, with whom Mr. Warren E. Baker, Gen. Counsel, Federal Communications Commission, was on the brief, for respondent Federal Communications Commission. Mr. J. Smith Henley, Asst. Gen. Counsel, Federal Communications Commission, entered an appearance for respondent Federal Communications Commission, and Mr. Daniel M. Friedman, Atty., Department of Justice, entered an appearance for respondent United States.
 Mr. Hugh B. Cox, Washington, D.C., with whom Messrs. Burke Marshall, Washington, D.C., and Edmund S. Hawley, New York City, were on the brief, for intervenors American Tel. & Tel. Co. and others. Mr. Ernest Jennes also entered an appearance for intervenors American Tel. & Tel. Co. et al.
 Mr. Bradford Ross, Washington, D.C., with whom Mr. Richard S. T. Marsh, Washington, D.C., was on the brief, for intervenor United States Independent Tel. Ass'n.
 Before EDGERTON, Chief Judge, and WILBUR K. MILLER and BAZELON, Circuit Judges.
 BAZELON, Circuit Judge.
 
 
 1
 This is a petition under § 402(a) of the Communications Act of 1934, as amended,[1] for review of a Federal Communications Commission order of December 21, 1955, dismissing the complaint which the petitioners had filed against the intervenors. The petitioners are the Hush-A-Phone Corporation and its president. The intervenors are the American Telephone and Telegraph Company, the twenty-one associated companies of the Bell System, and the United States Independent Telephone Association.
 
 
 2
 Since 1921, Hush-A-Phone has manufactured and sold a cup-like device of the same name, which snaps on to a telephone instrument and makes for privacy of conversation, office quiet and a quiet telephone circuit.[2] Over the years, more than 125,000 Hush-A-Phones have gone into use.
 
 
 3
 Pursuant to § 203(a) of the Act,[3] the intervenors have filed tariffs with the Commission showing not only charges for telephone service, but also 'the classifications, practices, and regulations affecting such charges.' These tariffs forbid attachment to the telephone of any device 'not furnished by the telephone company' and, for violation of these 'foreign attachment' provisions, the telephone companies claim the right to suspend or terminate service. The telephone companies have informed both vendors and users of Hush-A-Phones that the device may not be used under the tariffs. As a result, some of the petitioners' distributors have already given up selling Hush-A-Phones.
 
 
 4
 On December 22, 1948, petitioners filed a complaint with the Commission against the intervenors under § 208 of the Act,[4] demanding that the Commission order intervenors (1) to discontinue the described interferences with Hush-A-Phone distribution and use; and (2) to amend the foreign attachment provisions of their tariffs to permit the use of Hush-A-Phones. The Commission held hearings on the complaint in January 1950 and, on February 16, 1951, released its initial decision looking toward dismissal of the complaint. Oral argument [99 U.S.App.D.C. 192] on the exceptions to the initial decision was held on November 30, 1951, and the Commission took the case under advisement. In that status it remained for more than four years, until December 21, 1955, when the decision under review was made.
 
 
 5
 The Commission agrees that, if the use of Hush-A-Phones does not impair telephone service, a tariff provision barring use of the device would not be 'just and reasonable' within the meaning of § 201(b) of the Act[5] and the Commission, under the authority given it by § 205(a),[6] would prescribe a provision which would be 'just, fair, and reasonable'. It argues, however, that it has concluded, on the basis of its findings, supported by evidence, that the use of Hush-A-Phones does impair telephone service, and that we should not disturb that conclusion.
 
 
 6
 Although the Commission found[7] that using a Hush-A-Phone does not physically impair any of the facilities of the telephone companies,[8] it nevertheless concluded that the device is 'deleterious to the telephone system and injures the service rendered by it.' There seems in that conclusion a suggestion that the use of a Hush-A-Phone affects more than the conversation of the user-- that its influence pervades, in some fashion, the whole 'telephone system.' The Commission repeats this suggestion in its conclusion that use of a Hush-A-Phone involves 'public detriment.' It is because we see no findings to support these conclusions of systemic or public injury that we reverse the Commission's decision.
 
 
 7
 The effects of using a Hush-A-Phone, the Commission found, are to give the user privacy against nearby eavesdroppers and to make for a quieter line by excluding extraneous noise. When not used for privacy, i.e., when not pressed against the face to seal in the mouth, the Hush-A-Phone produces only negligible loss of intelligibility. When the device is used for maximum privacy, there is a noticeable loss of intelligibility (up to 13 decibels), which means that the person to whom the Hush-A-Phone user is speaking hears a lower and somewhat distorted sound. This diminution of volume and clarity of the Hush-A-Phone user's voice, as heard by the party to whom he is speaking, rather than any effect upon the system generally, appears to be what the Commission means when it speaks of impairment of service. It weighs against Hush-A-Phone's 'significant'[9] benefit of privacy the 'public [99 U.S.App.D.C. 193] detriment' involved in this loss of intelligibility[10] and concludes that it is not unjust and unreasonable to forbid the use of Hush-A-Phone.
 
 
 8
 The question, in the final analysis, is whether the Commission possesses enough control over the subscriber's use of his telephone to authorize the telephone company to prevent him from conversing in comparatively low and distorted tones. It would seem that, although the Commission has no such control in general, there is asserted a right to prevent the subscriber from achieving such tones by the aid of a device other than his own body. Thus, intervenors do not challenge the subscriber's right to seek privacy. They say only that he should achieve it by cupping his hand between the transmitter and his mouth and speaking in a low voice into this makeshift muffler. This substitute, we note, is not less likely to impair intelligibility than the Hush-A-Phone itself, for the Commission has found that 'whenever an enclosure is placed around the mouth of a person an intensification of frequencies below approximately 500 cycles occurs, and if the intensification is too great, a distortion or blasting effect results in the transmitter.'[11] In both instances, the party at the other end of the line hears a comparatively muted and distorted tone because the subscriber has chosen to use his telephone in a way that minimizes the risk of being overheard. In neither case is anyone other than the two parties to the conversation affected. To say that a telephone subscriber may produce the result in question by cupping his hand and speaking into it, but may not do so by using a device which leaves his hand free to write or do whatever else he wishes, is neither just nor reasonable. The intervenors' tariffs, under the Commission's decision, are in unwarranted interference with the telephone subscriber's right reasonably to use his telephone in ways which are privately beneficial without being publicly detrimental. Prescribing what changes should be made in the tariffs to render them 'just, fair, and reasonable' and determining what orders may be required to prohibit violation of subscribers' rights thereunder are functions entrused to the Commission.[12]
 
 
 9
 Order set aside and case remanded to the Federal Communications Commission for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 47 U.S.C.A. § 402(a)
 
 
 [2]
 'It is designed to permit the speaker to confine his voice within the enclosure formed by the device so that it is not heard by persons in the speaker's vicinity, thereby providing privacy of conversation and office quiet. It is also designed to improve telephone reception in noisy locations by keeping surrounding noises out of the telephone transmitter and thus out of the telephone circuit.' Commission's brief, p. 2
 
 
 [3]
 47 U.S.C.A. § 203(a)
 
 
 [4]
 Id., § 208
 
 
 [5]
 Id., § 201(b)
 
 
 [6]
 Id., § 205(a)
 
 
 [7]
 In searching out the Commission's findings it has been necessary for us to refer partly to that section of its decision which it called 'Conclusions'. The section it called 'Findings of Fact' consists in large measure of recitals of evidence and of the conflicting claims of the parties, rather than the Commission's determinations of fact
 
 
 [8]
 The intervenors' only claim of physical effect was rejected by the Commission. They contended that the attachment of a Hush-A-Phone to a telephone would tend to produce a more frequent 'off-hook' condition, because of the small clearances and the clumsiness and unbalance of the device. But the Commission, finding such objections 'largely conjectural,' declined to rest its decision upon them
 
 
 [9]
 The Commission also recognizes as an advantage of the Hush-A-Phone that it makes for a quiet line. But it excludes this advantage from consideration because 'telephone users may obtain from the defendant companies 'push-to-listen' and 'push-to-talk' switches which may be used to exclude noise from circuits.'
 The mere fact that the telephone companies can provide a rival device would seem to be a poor reason for disregarding Hush-A-Phone's value in assuring a quiet line. The Commission's approach is well calculated to raise those very questions under the antitrust laws which petitioners seek here to raise, but which, in view of our decision, we do not reach. It also tends to raise another question which we do not reach, namely, the reasonableness of a tariff which places control over petitioners' business in the hands of intervenors in the first instance. A system whereby intervenors may market equipment until such time as the Commission orders a halt, while petitioners may not market competitive equipment until the Commission givers them an authorization, seems inherently unfair. The unfairness is enhanced from time to time when the Commission's adjudicatory process bogs down. In this case, for example, more than four years elapsed between the oral argument of the exceptions to the Commission's initial decision and the final decision which left the initial decision essentially unchanged.
 
 
 [10]
 The 'other adverse effects which * * * result from the use of Hush-A-Phones' are 'upon recognition and naturalness of the user's voice and receiving impairment.' 'Recognition' and 'naturalness' are merely variations of intelligibility and, therefore, need receive no separate consideration. 'Receiving impairment' is the term the Commission gives to the fact that the size and shape of some heads is such that if a Hush-A-Phone is held sealed to the mouth, the receiver will not be 'well seated on the ear,' so that the user will not hear as well what is said by the other party. The Commission does not indicate why a Hush-A-Phone user would keep the phone glued to his lips when listening rather than speaking. Nor does it appear why the user may not, as a matter of his own choice, impair his ability to hear in order to attain privacy of speech. See text infra
 
 
 [11]
 Indeed the cupped hand may distort more than the Hush-A-Phone, for 'the Hush-A-Phone is provided with an acoustical filter and ducts which partially absorb the low frequencies; holes are also provided in the Hush-A-Phone through which the low frequencies are partially conveyed to the outside. The air blast effect is also reduced by releasing the air through the holes.'
 
 
 [12]
 Supra note 6