PUERTO RICO TELEPHONE
COMPANY, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, and United States of
America, Respondents,

Comtronics, Inc., Intervenor.

No. 76–1134.

United States Court of Appeals,
First Circuit.

March 31, 1977.

Alberto Pico Santiago and Alberto Pico Gonzalez, San Juan, P. R., with whom Brown Newsom & Cordova, San Juan, P. R., was on brief, for petitioner.

John E. Ingle, Counsel, Washington, D. C., with whom Werner K. Hartenberger, Acting Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, Donald I. Baker, Acting Asst. Atty. Gen., and Barry M. Grossman, Atty., Dept. of Justice, Washington, D. C., were on brief, for respondents.

Sigfredo Irizarry, San Juan, P. R., for Intervenor, Comtronics, Inc.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Until recently the Puerto Rico Telephone Company (PRTC) was a Delaware corporation operated as a subsidiary of the International Telephone & Telegraph Company. In 1974 the Commonwealth's legislature established the Puerto Rico Telephone Authority and directed it to "acquire and operate, through the means that it finds most convenient to the public interest, all the telephone and telegraph communication systems in Puerto Rico, in order that said system can meet the actual and future communication needs of our People." Law of May 6, 1974, Act No. 25. The Authority purchased the stock of PRTC shortly thereafter and commenced operation of the telephone system.

At the time the Telephone Authority took over PRTC, Comtronics, Inc. was a supplier of telephone terminal equipment, viz. private branch exchange (PBX) equipment. PBX equipment, we are given to understand, includes intra-office and intra-hotel telephone systems including a privately owned switchboard which furnishes the link between the subscriber's private system and the island-wide PRTC telephone system. After the Telephone Authority purchased PRTC it announced a policy of refusing to connect privately supplied PBX equipment with the PRTC telephone system. Comtronics sued PRTC in federal district court

but suffered dismissal for want of jurisdiction.[1] Several weeks later, Comtronics filed a complaint with the Federal Communications Commission (FCC) alleging that PRTC's actions violated tariffs which bound PRTC to permit interconnection of PBX equipment such as that supplied by Comtronics. The FCC ruled that the tariffs were binding on PRTC, and construing PRTC's defense as a request for a waiver, refused to relieve PRTC of the tariff requirements. However, the FCC denied the waiver without prejudice and requested PRTC to supply more detailed information in support of a renewed waiver request.[2]

■ PRTC petitions for review of the FCC's declaratory order that it is bound by the tariff requiring PRTC to permit interconnection. At the threshold, however, the FCC suggests that its denial of a waiver is not a final reviewable order since PRTC may file a new waiver request and therefore has not exhausted its administrative remedies. The agency freely concedes, however, that the "part of the order declaring that PRTC is bound by the interconnection tariffs" is final and reviewable.

We do not share the FCC's perspective on how the issues are framed. PRTC does not contest the FCC's finding that the telephone company's concurrence in the interconnection tariff survived the sale of PRTC to the Puerto Rico Telephone Authority.[3]

1. Comtronics' appeal from that decision, *Comtronics, Inc. v. Puerto Rico Telephone Co.*, 553 F.2d 701 was argued several months prior to this case. We postponed decision in order to consider that case in conjunction with the instant petition. Because Comtronics' appeal is disposed of on grounds separate from those which control this case, we have dealt with *Comtronics, Inc. v. Puerto Rico Telephone Co., supra,* in a separate opinion.

2. The FCC listed 18 areas concerning which it requested more detailed economic information.

3. On November 15, 1973, PRTC, then an ITT subsidiary, concurred in All America Cables & Radio, Inc., Tariff No. 1. On March 4, 1974, All America Cables & Radio, Inc. rendered PRTC's concurrence effective by formally filing it with the FCC. Before the FCC, PRTC argued that "[a]t the time of that filing, . . . ITT had already entered into an agreement in principle to sell the stock of PRTC to the Authority,

which sale, when consummated, was to be retroactive to January 1, 1974. . . . [U]pon the purchase of PRTC by the Authority, PRTC ceased to be a carrier fully subject to the Communications Act and became a connecting carrier under the terms of Section 2(b)(2) [47 U.S.C. § 152(b)(2)]. The Rules and Regulations of the Commission do not permit connecting carriers to file concurrences, and specifically exclude connecting carriers from the definition of 'concurring carriers.' . . . Thus, the purported concurrence by PRTC in AAC & R's tariff was either void at the outset or became void by operation of the Commission's Rules and Regulations."

The FCC ruled that the sale of PRTC and its new status as a connecting carrier did not operate to relieve it from concurrence in AAC & R Tariff No. 1. Petitioner PRTC does not challenge this aspect of the FCC's order on appeal, and we therefore accept the agency's finding.

However, PRTC does challenge the FCC's order on grounds that the agency erred in failing to give controlling ·weight to the Puerto Rican legislature's alleged direction that all telephone equipment be state-owned. In addition, PRTC argues that the FCC acted beyond its authority since PRTC's actions related to intrastate facilities and therefore were exempted by the Communications Act from regulation. *See* 47 U.S.C. §§ 152(b), 221(b). Finally, PRTC claims that since the FCC's policy of fostering maximum interconnection of PBX equipment and like facilities springs from a desire to enhance competition, a policy which PRTC considers to be alien to the regulatory scheme of the Communications Act, the FCC's refusal to release PRTC from the tariff is arbitrary and capricious.

Whether we view PRTC's arguments as challenging the FCC's ruling that PRTC is bound to the interconnection tariff or the Commission's refusal to permit a waiver on the facts presently before it, we think that the issues outlined above are ripe for review. Hence, we do not agree with the FCC that its leaving the door open to reconsideration of the PRTC case on the basis of additional facts showing economic hardship should bar our review, for abuse of discretion, of its decision that on the basis of the facts available to it, a waiver was not warranted. The issues which PRTC raises here have been finally decided against it by the FCC, and, it appears, will not be open to reconsideration by that agency. Moreover, the FCC ruled that PRTC has been bound by the tariff since early 1974. A waiver

granted on reconsideration will operate prospectively only,[4] leaving PRTC potentially liable for past violations. Quite understandably, therefore, PRTC has retreated from its refusal to permit interconnection pending review by this court.[5] Thus, it is clear to us that the FCC's order is causing sufficient hardship to PRTC and is sufficiently final to present clearcut issues appropriate at this time for judicial resolution. *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970); *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Northeast Airlines, Inc. v. CAB,* 345 F.2d 662, 664 (1st Cir. 1965).

The statutory scheme involved in this case is fairly complex and we set out our understanding of it at this point as a basis for the discussion which follows. The Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.,* vests the FCC with the power to regulate interstate telephone communications. While the FCC's authority under the statute is comprehensive with respect to most interstate carriers, such as AT&T, its jurisdiction over PRTC is considerably narrower. Section 2(b) of the Communications Act, 47 U.S.C. § 152(b), provides that "nothing in this Act shall be construed to apply or to give the Commission jurisdiction with respect to" a "connecting" carrier, such as PRTC "except that sections 201 through 205 of this Act, both inclusive, shall, except as otherwise provided therein, apply to" connecting carriers.[6] Section 201(b), 47 U.S.C. § 201(b), requires in turn, that

4. *Comtronics, Inc. v. PRTC, supra* (F.C.C. Feb. 13, 1976), slip op. at 4 n. 4.

5. At oral argument and in a motion subsequently filed with this court, Comtronics, Inc., as intervenor, has argued that PRTC's adoption of a tariff permitting interconnection of equipment sold by suppliers other than PRTC was voluntary and therefore undercuts its argument that Act No. 25 creating the Telephone Authority mandated ownership of all telephone facilities by the Commonwealth. This argument is without merit. It is clear to us from the record in this case that PRTC acquiesced in a liberalized interconnection policy as a result of the FCC's declaratory order and in order to mini-

mize its potential liability. PRTC's actions in this context neither moot the controversy nor detract from the strength of its arguments based on the asserted intent of the Puerto Rican legislature.

6. 47 U.S.C. § 152(b)(2) defines a connecting carrier as "any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier." The FCC does not dispute that PRTC is currently a "connecting" carrier under the Act.

"[a]ll charges, practices, classifications, and regulations for and in connection with [interstate wire] communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful; . .
The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this act."

Section 3(a), 47 U.S.C. § 153(a), in turn, defines interstate "wire communication" as the "transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire . . . including all instrumentalities, facilities, apparatus and services . . incidental to such transmission." Finally, under § 203, a connecting carrier such as PRTC is required to post and adhere to tariffs governing its interstate rates and facilities.

In this case the FCC's refusal to permit PRTC to deviate from the tariff was based on a finding that "a blanket prohibition of the interconnection of customer-provided terminal equipment which did not adversely affect the telephone system was unreasonable and unlawful" under § 201(b). *Comtronics, Inc. v. Puerto Rico Telephone Co.,* No. 76–126 (F.C.C. Feb. 13, 1976). The prohibition was ruled unreasonable since "it was an 'unwarranted interference with the subscriber's right reasonably to use his telephone in ways which are privately beneficial without being publicly detrimental.'"[7] *Id.,* quoting *Carterfone,* 13 F.C.C.2d 420, 424 (1968).

PRTC challenges the FCC's ruling first on the grounds that the prohibitions of § 201 and the FCC's authority under the Act to enforce § 201 do not reach PRTC's essentially local policy of refusing to permit interconnection of PBX equipment. PRTC argues that the literal reach of 47 U.S.C.

§§ 153(a), 201(b), quoted above, is restricted by provisions of the Act exempting intrastate communication facilities from federal control. For example, section 2(b), 47 U.S.C. § 152(b), provides that

"nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) . . . facilities . . . for or in connection with intrastate communication service by wire . . . of any carrier".

Furthermore, § 221(b), 47 U.S.C. § 221(b), provides that

"nothing in this chapter shall be construed to apply, or to give the Commission jurisdiction with respect to charges, classifications, practices, services, facilities, or regulations for or in connection with wire . . . telephone exchange service . . . even though a portion of such exchange service constitutes interstate or foreign communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority."

Read literally, these provisions do appear to preclude the federal jurisdiction extended elsewhere in the Act. However, we think that these sections sweep far less broadly than their language would indicate.

■ The legislative history of § 221(b) is sparse but it is nonetheless unequivocal. Section 221(b) was intended to exempt from FCC regulation "exchange services in metropolitan areas overlapping State lines." S.Rep. No. 781, 73d Cong., 2d Sess. 5 (1934); *accord* H.R.Rep. No. 1850, 73d Cong., 2d Sess. 7 (1934); 78 Cong.Rec. 10314 (remarks of Representative Rayburn). *See* 78 Cong. Rec. 8823 (remarks of Senator Dill). In light of this, we are convinced that § 221(b) was intended not as a general grant of autonomy to state commissions, but as a special grant of freedom from federal interference for those few, essentially local, tele-

---

7. The FCC's policy on interconnecting has been developed in a series of cases dating back to 1957. *E. g., Hush-a-Phone Corp.,* 22 F.C.C. 112 (1957), on remand from *Hush-a-Phone Corp. v. United States,* 99 U.S.App.D.C. 190, 238 F.2d 266 (1956); *Carterfone,* 13 F.C.C.2d 420, *reconsideration denied,* 14 F.C.C.2d 571 (1968); *Tel-*

*erent Leasing Corp.,* 45 F.C.C.2d 204 (1974), *aff'd sub nom. North Carolina Utilities Comm'n v. FCC,* 537 F.2d 787 (4th Cir. 1976); *A.T.& T.—Mebane,* 53 F.C.C.2d 473 (1975), *aff'd mem. sub nom. Mebane Home Telephone Co. v. FCC,* 175 U.S.App.D.C. 362, 535 F.2d 1324 (1976).

phone exchange services which serve metropolitan areas embracing parts of several states. As such, § 221(b) was probably intended simply to provide the same degree of autonomy for state regulation of multistate metropolitan area exchanges as § 2(b) provides for wholly intrastate metropolitan exchanges. *North Carolina Utilities Comm'n v. FCC,* 537 F.2d 787, 795, (4th Cir. 1976). In any event, because we construe § 221(b) as applicable only to attempted FCC regulation of local service in a multistate metropolitan area, we hold that it has no bearing on this case.

■ PRTC's attempted monopolization of the supply of PBX equipment is, therefore, arguably exempted from FCC scrutiny only by § 2(b)(1), 47 U.S.C. § 152(b)(1). The conflicting statutory language leaves the matter far from free of doubt. *Compare* 47 U.S.C. § 152(b)(1) *with id.* §§ 153(a), 201(b). A great many, perhaps the majority of telephone facilities, practices and regulations affect both intrastate and interstate messages, yet the statute, in literal terms, appears to divide jurisdiction absolutely: § 201(b) permits the FCC to regulate matters "for and in connection with [interstate] communication service," and § 152(b) excludes from federal jurisdiction matters "for or in connection with intrastate communication service". Nevertheless, we conclude that § 2(b)'s exclusion of federal regulation of intrastate facilities does not deprive the FCC of jurisdiction, pursuant to § 201, over the PBX equipment in this case.

That policies affecting the use of a subscriber's terminal equipment are within the scope of § 201 follows, we think, from the Supreme Court's 1945 decision, *Ambassador, Inc. v. United States,* 325 U.S. 317, 65 S.Ct. 1151, 89 L.Ed. 1637. In that case the Court upheld a tariff prohibiting hotels that used PBX equipment from imposing a surcharge on interstate calls made by their guests, holding that § 201(b) "clearly authorize[s] [telephone] companies to promulgate rules binding on PBX subscribers as to the terms upon which the use of the facilities may be extended to others not themselves subscribers." *Id.* at 323, 65 S.Ct. at 1155.

While the case involved rates rather than facilities, the conclusion nevertheless turns on the assumption that FCC jurisdiction under § 201 extends to "interstate wire communication from its inception to its completion" and that "wire communication within the meaning of the Communications Act [does not end] at the PBX board . . . ." *United States v. AT&T,* 57 F.Supp. 451, 454–55 (S.D.N.Y.1944), *aff'd mem. sub nom. Hotel Astor v. United States,* 325 U.S. 837, 65 S.Ct. 1401, 89 L.Ed. 1964 (1945). This conclusion, we think, requires us to hold that § 201(b) vests the FCC with jurisdiction to determine the reasonableness of PRTC's attempt to dictate the terms on which PBX subscribers might obtain and use their equipment.

■ We think it significant also that the FCC has consistently construed the pertinent statutory provisions to reach tariffs governing the supply and use of equipment such as that involved here. *See, e. g., Telerent Leasing Corp.,* 45 F.C.C.2d 204, 218–19 (1974), and cases therein cited. The construction placed on the statute over the years by the agency charged with its administration is entitled to some deference. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). *See Levinson v. Spector Motor Service,* 330 U.S. 649, 672, 67 S.Ct. 931, 91 L.Ed. 1158 (1947). Moreover, the courts have upheld FCC regulations in this and similar contexts. *See, e. g., North Carolina Utilities Comm'n v. FCC, supra* at 794 (upholding the same interconnection policy challenged here); *GTE Services Corp. v. FCC,* 474 F.2d 724, 736 (2d Cir. 1973) (connecting carrier bound by FCC rules governing relationship between data processing and communications services); *Ward v. Northern Ohio Telephone Co.,* 300 F.2d 816 (6th Cir.), *cert. denied,* 371 U.S. 820, 83 S.Ct. 37, 9 L.Ed.2d 61 (1962) (connecting carrier required to furnish intrastate telephone lines to radio stations broadcasting interstate).

■ Thus, we agree with the majority in *North Carolina Utilities Comm'n, supra,* 537 F.2d at 793, that, while § 152(b) deprives the FCC of power "over local services, facil-

ities and disputes that in their nature and effect are separable from and do not substantially affect" interstate communications, it does not "sanctio[n] any state regulation, formally restrictive only of intrastate communication, that in effect encroaches substantially upon the Commission's authority under sections 201 through 205." [8]

 It may seem somewhat anomalous, as PRTC argues, that federal regulation should oust the Commonwealth of jurisdiction over PBX equipment which is used predominantly for intrastate calls.[9] But we find it even more anomalous, in light of the FCC's broad mandate to "make available so far as possible, to all the people of the United States a rapid, efficient Nation-wide . . . communication service with adequate facilities at reasonable charges . . . ," 47 U.S.C. § 151, that § 152(b) ousts federal jurisdiction over all facilities that are also used for intrastate telephone service. As a practical matter, the consequence of such an interpretation would be to allow local telephone companies to control access to the interstate telephone system free of FCC regulation. We think that the clear import of the Communications Act, as it has been construed by the FCC and by the courts for many years, is that no matter how frequently or infrequently a subscriber places interstate calls, he is entitled to have the conditions placed on access to the interstate telephone system measured against federal standards of reasonableness under § 201. We are therefore led to the conclusion that § 201 displaced the residual state jurisdiction guaranteed by § 152(b) since the interconnection policies adopted by the FCC and PRTC are incompatible.

Having concluded that the FCC had jurisdiction over this controversy, we have less difficulty in concluding that, on the merits, the agency did not err in holding PRTC bound to the AAC & R tariff. PRTC argues that the FCC should have given conclusive weight to the fact that the legislature of Puerto Rico in Act No. 25 directed that PRTC be sole supplier of equipment such as that involved in this case.[10]

 We understand PRTC to argue first that the FCC's actions in this case violate the immunity of state governmental functions which the Supreme Court in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), ruled were beyond the reach of the commerce power. We cannot agree. In *National League of Cities v. Usery, supra,* the Court held that "insofar as the challenged amendments operate to directly displace the States' freedom to structure integral operations in areas of traditional governmental functions, they are not within the authority granted Congress by Art. I, § 8, cl. 3." *Id.* at 852, 96 S.Ct. at 2474. The Court further stated that "the operation of a railroad engaged in 'common carriage by rail in interstate commerce'" was not one of the "integral parts of [state] governmental activities." *Id.* at 854 n. 18, 96 S.Ct. at 2474 n. 18, *quoting United States v. California*, 297 U.S. 175,

8. As some evidence that this allocation of power is consistent with Congressional priorities, we note that the Senate Report accompanying Act of Sept. 30, 1971, Pub. L. No. 92–131, *amending* 47 U.S.C. § 410, made it clear that Congress recognized that the federal and state regulatory commissions for purposes of rate-setting have coordinate jurisdiction over a wide range of telephone equipment, including household telephone instruments. S.Rep. No. 362, 92d Cong., 1st Sess., 2 U.S.Code Cong. & Admin.News, p. 1512 (1971). And, to the extent any conflict exists, the FCC's rate-making authority displaces the state's ability to include that portion of the equipment's cost in the intrastate rate base. *Id.* at 1513. From this we may conclude that Congress also regards the jurisdictional lines for tariff regulation as having been drawn in a similar fashion.

9. At oral argument we were informed that in 1973 intrastate calls originating in Puerto Rico generated five times the revenue generated by interstate telephone messages.

10. The parties strenuously contest the meaning of Act No. 25's directive that PRTC own the communications facilities of the island. *See* Act No. 25, §§ 2, 3(b), 7(g). For purposes of this appeal, we assume without deciding that the legislature of Puerto Rico intended that PRTC have a monopoly over the supply of PBX equipment.

182, 56 S.Ct. 421, 80 L.Ed. 567 (1936). In light of this, we feel constrained to rule that PRTC's ownership and control of the telephone equipment involved in this case are not exempt from FCC regulation pursuant to the Commerce Clause.

■■■ PRTC also argues that the FCC abused its discretion in failing to give controlling weight to the legislature's directive that the state exercise monopolistic control over the supply of PBX and other equipment. We do not believe that the FCC is free to ignore the Commonwealth's substantial interests in the rapid expansion and improvement of an intrastate telephone network, which was portrayed in this case as having languished in a state of serious underdevelopment during the years of private ownership. Rather, the FCC must determine whether a PTRC monopoly in this case will enhance the development of intrastate and interstate telephone service. Against that finding must be balanced the asserted countervailing interest of telephone subscribers "reasonably to use . . telephone[s] in ways which are privately beneficial without being publicly detrimental." [11] *Carterfone, supra,* 13 F.C.C.2d at 424. On this record we do not believe that the FCC erred in refusing to strike the balance in favor of PRTC. The Commission requested additional economic data from PRTC relative to the impact of interconnection policies on telephone service in Puerto Rico. We think that the FCC did not abuse its discretion in postponing the final denial

11. PRTC also challenges the FCC's ruling in this case on grounds that the FCC's policy of fostering competition is contrary to the regulatory scheme of the Communications Act and therefore cannot support a refusal to find that PRTC's actions are reasonable within the meaning of § 201(a). We view the matter differently. The end to be achieved by the FCC's policy is the maximization of consumer choice in quantity and quality of telephone interconnecting equipment. It would require the contradiction of some fundamental economic assumptions for us to conclude that this end cannot be achieved by the means of increased competition. The FCC's policy is therefore rationally based. However, competition is not the only factor involved in this case.

of a waiver until more information had been submitted.

*Affirmed.*

We are sympathetic to the unique position of PRTC as a state-owned utility seeking to improve a seriously deficient telephone service as one step toward the overall improvement of Puerto Rico's economy. We expect that the FCC will give substantial weight to these interests in any future determination of the reasonableness of PRTC's interconnection policies. We simply decide in this case that the FCC correctly concluded that it did not have sufficient data to strike the balance in favor of a waiver, and we expect that the FCC will now entertain a renewed, explicit request by PRTC for a waiver.