COMTRONICS, INC., Plaintiff, Appellant,

v.

PUERTO RICO TELEPHONE COMPA-
NY et al., Defendants, Appellees.

No. 75–1321.

United States Court of Appeals,
First Circuit.

March 31, 1977.

As Amended on Denial of Rehearing and
Clarification May 18, 1977.

Sigfredo A. Irizarry, San Juan, P. R., for plaintiff, appellant.

Alberto Pico, San Juan, P. R., with whom, Brown, Newsom & Cordova, San Juan, P. R., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This case arises from the same events as *Puerto Rico Telephone Co. v. FCC*, 553 F.2d 694 (1st Cir. 1977), in which we sustained a declaratory order of the Federal Communications Commission (FCC) holding that the Puerto Rico Telephone Company (PRTC) is bound by a tariff permitting the interconnection of subscriber-owned and supplied telephone equipment. The tariff in question, F.C.C. No. 263, provides in pertinent part:

> "§ 2.6.1 General Provision. Customer-provided terminal equipment may be used with the facilities furnished by the Telephone Company, for long distance message telecommunications service, as specified in 2.6.2 through 2.6.6 following."

Sections 2.6.2 through 2.6.6 describe the types of equipment which may be connected by subscribers and enumerate restrictions designed to prevent harm to telephone company equipment. Tariff No. 263 clearly authorizes interconnection of the equipment supplied by appellant Comtronics, Inc., viz. private branch exchange (PBX) facilities, switchboard equipment such as that used by hotels and large offices.

Appellee PRTC was privately owned in early 1974 at the time of its concurrence in Tariff No. 263. Several months later, pursuant to legislation enacted by the legislature of Puerto Rico, PRTC was purchased by the Commonwealth and thereafter it was run as a publicly owned utility.[1] In mid-1974, according to Comtronics' allegations, PRTC, without amending the pertinent tariff, announced a policy of refusing to interconnect its equipment with customer-owned equipment such as that supplied by Comtronics. Appellant sued for damages and for declaratory and injunctive relief, alleging violations by PRTC of the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.* and of Comtronics' rights to due process and equal protection under the fourteenth amendment. The district court dismissed for lack of jurisdiction.[2] 409

---

1. In the pleadings filed with the district court and before the FCC, PRTC maintained that its concurrence in Tariff No. 263 did not survive the sale of the company to the Commonwealth. The FCC disagreed and we accept its finding in this respect. *See Puerto Rico Tel. Co. v. FCC*, 553 F.2d 694 at n. 3 (1st Cir. 1977).

2. The order of the district court might be more properly termed a dismissal for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). *See Carr v. Learner*, 547 F.2d 135 (1st Cir. 1976).

F.Supp. 800 (D.P.R.1975). We deferred ruling on Comtronics' appeal from that order so that we might consider this case in conjunction with our review of the FCC's order holding PRTC bound to Tariff No. 263.

## I. *The Communications Act Claim.*

■ A common carrier such as AT&T which provides interstate telephone service is subject to all of the provisions of the Communications Act. However, the Act's application to a non-subsidiary "connecting" carrier, such as PRTC, which is "engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier" is limited. Under 47 U.S.C. § 152(b), "nothing in [the Act] shall be construed to apply or to give the Commission jurisdiction with respect to . . . any [connecting] carrier . . . except that sections 201–205 . . . shall . . . apply". Sections 201 through 205 provide, *inter alia,* that tariffs be "just and reasonable," § 201(b), and that connecting carriers publish and adhere to the tariffs in which they have concurred, § 203(a) & (b). Section 203(e) establishes penalties for violations of these duties, and § 205 vests the FCC with enforcement power and provides penalties for violations of FCC orders.

Sections 201 through 205 make no mention of a damages remedy. However, § 206 provides that "any common carrier" violating the Act shall be liable in damages to the person injured thereby. Furthermore, § 207 enables a person injured by such a common carrier to bring an action for damages in the district court. Finally, §§ 208–09 provide a procedure whereby the FCC may order payment of damages by an offending common carrier.

In the present case, the district court noted that the Act does not explicitly create a cause of action for damages caused by PRTC's alleged violation of § 203(b)'s re-quirement that it adhere to its tariff permitting interconnection of PBX equipment. *See* 409 F.Supp. at 817. The court also reasoned that no federal common law remedy should be implied because the interest asserted by Comtronics was not protected by the Communications Act:

> "The Act does not impose any duty on PRTC with respect to plaintiff. It is only intended to establish the conditions upon which communications services of an interstate nature will be lawfully provided and thus only regulates the bilateral relationship between the carrier and its subscriber." *Id.*

■ We agree with the district court that the Act cannot be read as explicitly creating a damages remedy against a connecting carrier such as PRTC. Section 152(b) subjects PRTC to §§ 201–05 alone; the damages liability created by § 206 and the damages remedy authorized by §§ 207 and 209, therefore, do not apply to PRTC. *But see Ward v. Northern Ohio Telephone Co.,* 300 F.2d 816, 820 (6th Cir.), *cert. denied,* 371 U.S. 820, 83 S.Ct. 37, 9 L.Ed.2d 61 (1962).

■ We also conclude that no judicially created damages remedy is available to Comtronics to compensate for the harm caused by PRTC's alleged violation of the Communications Act. However, we reach this result for reasons which differ from those expressed by the district court. We disagree with the district court's implicit conclusion that Comtronics is not within the class protected by § 203(b)'s requirement that a carrier adhere to its tariffs until amendments are adopted in conformity with the procedural requirements of the Act.[3] Undoubtedly, the dominant purpose of the liberalized interconnection policy embodied in the tariff which PRTC allegedly abrogated was to benefit consumers of telephone services. *See, e. g., Puerto Rico Tele-*

---

3. Under the principles enunciated by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), an implied remedy is not available to a plaintiff who is not "one of the class for whose especial benefit the statute was enacted". *Id.* at 78, 95 S.Ct. at 2087, *quoting Texas & P. R. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916) (emphasis deleted). *Accord, Piper v. Chris-Craft Indus., Inc.,* — U.S. —, —, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

*phone Co. v. FCC, supra* at n. 10; *Hush-a-Phone Corp. v. United States,* 99 U.S.App. D.C. 190, 238 F.2d 266, 269 (1956); *Carter-fone,* 13 F.C.C.2d 420, 424, *reconsideration denied,* 14 F.C.C.2d 571 (1968). However, consumers' rights to obtain cheaper and more efficient interconnection equipment cannot be vindicated unless suppliers, acting in reliance on the tariff, undertake the cost of providing such equipment.[4] *Cf. Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953); *FCC v. Sanders Bros. Radio Station,* 309 U.S. 470, 477, 60 S.Ct. 693, 84 L.Ed. 869 (1940). Indeed, a supplier's need for the assurance which a tariff provides is demonstrably more immediate and of greater weight than a consumer's. Given the identity of interests between a supplier and consumer and the supplier's greater reliance on tariff guarantees, we think that Comtronics is within the class of intended beneficiaries protected by § 203(b).

■ Our conclusion that no judicially created damages remedy is available is impelled by what we perceive as a clear legislative intent to preclude such a remedy. We agree with our dissenting brother that it is unfortunate that economic harm flowing from PRTC's asserted violation of the Act should go unremedied. We also agree that the enforcement scheme of the Communications Act vis a vis connecting carriers might be seriously flawed by the absence of a damages remedy. *Cf. Piper v. Chris-Craft Industries, Inc.,* — U.S. —, ——, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *J. I. Case Co. v. Borak,* 377 U.S. 426, 433, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). However, it is not for us to expand the remedial scheme established by Congress unless expansion would be "consistent with the evident legislative intent". *National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974). "[I]n situations in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an inten-

tion to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling." *Cort v. Ash,* 422 U.S. 66, 82, 95 S.Ct. 2080, 2090, 45 L.Ed.2d 26 (1975). Turning to the statute before us and its legislative history, we perceive such "an explicit purpose to *deny* [a] cause of action".

Section 206 provides:

"In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained . . ."

Section 153(h), in turn, defines a "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio . . . except where reference is made to common carriers not subject to this chapter".

■ By its literal terms, therefore, § 206 reaches PRTC as well as such pre-eminent common carriers as AT&T and ITT. However, as noted above, § 152(b) provides that "nothing in this chapter shall be construed to apply . . . to . . . any [non-subsidiary] carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier . . . except that sections 201–205 of this title shall . . . apply . . . ." Thus, a "connecting" carrier such as PRTC is explicitly removed from the class of carriers against which damages liability is created. The necessary implication is that Congress chose to shield "connecting" carriers from damages liability. This reading of the language of the statute is, we think, borne out by the legislative history of the Communications Act of 1934.

As originally reported by the Senate Commerce Committee, the Communications Act provided no specific exemption for "connecting" carriers from any of the Act's

---

4. In the context of agency action, it is noteworthy that consumers' rights under the policy of liberalized interconnection have been enforced primarily through actions brought by suppliers. *E. g., Carterfone,* 13 F.C.C.2d 420, *reconsideration denied,* 14 F.C.C.2d 571 (1968); *Hush-a-Phone Corp.,* 22 F.C.C. 112 (1957), on remand from 99 U.S.App.D.C. 190, 238 F.2d 266 (1956).

provisions. Rather, in the words of the committee chairman, "we have tried . . throughout the bill . . . to protect the independent companies." 78 Cong.Rec. 8847 (remarks of Senator Dill). Nevertheless, the Senate, without objection, adopted an amendment providing a total exemption for connecting carriers:

"(b) Nothing in this act shall be construed to apply or to give the commission jurisdiction with respect to charges, classifications, practices, or regulations for or in connection with intrastate communication service of any carrier, or to any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by such carrier, or under direct or indirect control with such other carrier." *Id.* at 8846.

Thus, as the bill passed the Senate, it was contemplated that "connecting" carriers would be wholly free of the Act's restraints.

In the House Committee, the Senate-passed exemption was modified:

"The [House] amendment retains this provision except that it makes such carriers subject to sections 201 and 205, providing for the regulation of charges and prohibiting discrimination." H.R.Rep. No. 1850, 73d Cong., 2d Sess. at 2 (1934).

*Accord,* 78 Cong.Rec. 10313 (remarks of Representative Rayburn). With the exemption thus amended, the bill was enacted. 48 Stat. 1064. *See* 47 U.S.C. § 152(b).

From this review of the legislative history, it is clear to us that Congress, working against the backdrop of a proposed total exemption for "connecting" carriers, chose to go no further than to subject a company such as PRTC to §§ 201–05. We must assume that the legislative draftsmen were conscious of the nearby § 206 and that when they provided that it shall not "apply," § 152(b), they meant that damages liability shall not apply.

Other portions of the legislative materials indicate to us that our perception of a congressional intent to deny a damages remedy against connecting carriers is not erroneous.

For example, Representative Rayburn, Chairman of the House Commerce Committee, explained the creation of civil penalties for violations of § 202:

"Section 202(c) is a penal provision which will apply to those small independent companies made subject to sections 201–205 inclusive, but exempted from the other provisions of the act under [§ 152(b)]." 78 Cong.Rec. 10313.

We think it likely that the "other provisions" to which Chairman Rayburn contrasted § 202(c) are the damages provisions of §§ 206–09, and that his remarks may be taken to reflect a congressional intent that the civil penalties of § 202(c) and the other penalty and FCC order provisions of §§ 201–05 were to be the exclusive method of enforcing the Act with respect to connecting carriers.

Our reading of the statute as precluding a damages remedy is also consistent with the legislative purpose in excluding connecting carriers from most of the Act's provisions. The primary purpose of the 1934 Communications Act was to subject the burgeoning power of such near-monopolies as AT&T to more effective federal regulation. *See* 78 Cong.Rec. 10315 (remarks of Representative Rayburn). In contrast, the purpose of the Senate's total exclusion of "connecting" carriers was to exempt tiny, mostly rural telephone companies from federal regulation. 78 Cong.Rec. 8846 (remarks of Senator Clark). The House amendment subjecting such companies to §§ 201–05 likely represented a compromise between a desire to free such small businesses of federal regulation and a practical realization that a minimum of federal control was necessary to regulate that portion of the local companies' business which was interstate. Since Congress in 1934 perceived "connecting" carriers as weak, rural exchanges, it seems likely that Congress was reluctant to subject such companies to damages liability. Congress might have concluded instead that the civil penalties provided in §§ 201–05 would be sufficient to insure compliance with federal law. In the four decades since the Communications Act was passed, "connecting" carriers have

come to include such a large enterprise as PRTC, against which the penalties provided in §§ 201–05 might prove ineffective. It is for Congress, however, and not for this Court, to rewrite the statute to reflect changed circumstances. *See Martinez Hernandez v. Air France,* 545 F.2d 279, 284 (1st Cir. 1976).

■ Finally, our interpretation of Congress' intent in 1934 is aided by the principle of statutory construction *expressio unius est exclusio alterius, i. e.,* "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *National Railroad Passenger Corp., supra.* Although the Supreme Court has assigned differing weight to this principle in recent years, *compare id. with Cort v. Ash, supra* at 82 n. 14, 95 S.Ct. at 2090, n. 14, we think that, at the least, the maxim of *expressio unius* has vitality where "a private cause of action [is] provided in favor of certain plaintiffs concerning the particular provision at issue" while no damages remedy is afforded another class of plaintiffs suffering the same harm. *Id.* As a corollary, *expressio unius* should have some probative value with respect to congressional intent where a damages remedy is provided against one class of defendants but not against another class violating the same statutory prohibition. *See T.I.M.E., Inc. v. United States,* 359 U.S. 464, 470–71, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959) (Harlan, J.). In light of the "significant omissions," *id.* at 471, 79 S.Ct. 904, of damages liability, or a cause of action therefor, in the present case, we are reinforced in our belief that Congress intended that "connecting" carriers' violations of § 203(b) not give rise to damages liability.[5]

## II. *The Fourteenth Amendment Claim.*

Comtronics also pleaded a cause of action based on the fourteenth amendment, claiming that PRTC had deprived it of its property in violation of due process and equal protection. Appellant's action under the fourteenth amendment raises a number of troubling issues. To resolve its claim, it would be necessary to decide, for example, whether PRTC's tariff filed with the FCC constituted "property" of Comtronics within the meaning of the fourteenth amendment, *see, e. g., Board of Regents v. Roth,* 408 U.S. 564, 569, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Medina v. Rudman,* 545 F.2d 244 (1st Cir. 1976), and whether a state-owned utility such as PRTC is a "person" against whom a claim may be stated under 42 U.S.C. § 1983. *See, e. g., City of Kenosha v. Bruno,* 412 U.S. 507, 511–13, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). And, if we were to conclude that Comtronics could not bring an action against PRTC under § 1983, it might be necessary to decide whether a judicially created remedy under the fourteenth amendment was available. *Cf. Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 277–279, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■■ However, we need not reach these difficult questions. Congress has subjected PRTC's actions as a carrier to the detailed regulatory scheme of the Communications Act. In such circumstances, the "precisely drawn, detailed statute pre-empts more general remedies." *Brown v. GSA,* 425 U.S. 820, 834, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976). Pre-emption is particularly apparent, we think, where, as here, Congress has adopted in the more detailed regulatory scheme a policy of exempting the defendant's actions from damages liability.[6] *Cf. Preiser v. Rodriguez,* 411 U.S. 475, 489–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

---

5. We need not decide Comtronics' claim to declaratory and injunctive relief. Our affirmance in *Puerto Rico Tel. Co. v. FCC, supra,* upholding the FCC's finding that PRTC was bound by the tariff and its order that it adhere to its published tariff is the equivalent of such relief.

6. Section 414 of the Communications Act provides:

For these reasons we conclude that no damages remedy is available to Comtronics.

*Affirmed.*

COFFIN, Chief Judge, dissenting.

Were ours the first judicial effort to interpret these statutes, the court's opinion might well carry the day for me. But, on a close issue of interpretation, I admit to being influenced by the fact that the only authority on point, *Ward v. Northern Ohio Telephone Co.*, 300 F.2d 816 (6th Cir. 1962), is contrary. While I would not follow *Ward* to the extent of effectively implying a right of action for all violations of §§ 201–205, it seems to me that when we add its solitary and long-standing authority to the essentiality of a private damages action for the carrying out of the policies embodied in § 203, the consistency of such an action with the statutory scheme, and the opaqueness of the legislative history, the balance tips in favor of the action.

The consequences of the court's holding are illustrated by the facts of this case. Here, PRTC's tariff required that it permit the interconnection of privately owned telephonic equipment in accordance with a long-standing FCC policy. If PRTC had been disposed to comply with § 203 when it decided that this provision was too burdensome, it would have proposed a change in its tariff to the FCC at least thirty days before the effective date thereof. We may safely assume that the FCC would have denied this request sometime before the effective date. Companies like Comtronics would then have been spared the substantial financial losses they allegedly incurred, and the consumers of PRTC's services would not have been temporarily denied the benefits of the interconnection policy. It is easy to see that § 203 is a key feature of the regulatory scheme; it enables the FCC to secure continuous carrier compliance with critical FCC policies.

The court's holding today creates an incentive for connecting carriers to disregard the specified procedures for amending their tariffs. By ignoring § 203 and unilaterally amending its tariff to give itself a monopoly, PRTC bestowed an immense financial benefit on itself and caused enormous, perhaps irreparable, damage to its competitors. I have no difficulty assuming that the net financial advantage flowing to PRTC from the violation was greatly in excess of the maximum civil penalty which could be imposed, *see* § 203(b). I have no reason to doubt that other tariff violations will often be similarly profitable. Since the court refuses to imply a damages remedy, companies like PRTC will hereafter have a positive incentive to violate certain provisions of their tariffs. I cannot believe that Congress could have contemplated that the FCC's ability to secure continuous compliance with its tariffs was to depend on how lucrative the violations thereof were to be.[1]

"Nothing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies."

While we may concede that § 414 would not deprive anyone of an independent action under § 1983, any viable § 1983 action here would be based on property rights alleged to have been created under the Communications Act. As such, a § 1983 action would be no more than an additional remedy for a violation of a duty created by the Communications Act. Because we hold that Congress withheld a damages remedy under the Act against connecting carriers (and as our brother Coffin's dissent indicates the question is concededly not open and shut), we think it would make little sense to hold that a damages remedy exists against them under § 1983 for violations of the very same Act. The "existing" remedies Congress had in mind under § 414 would scarcely be remedies so closely dependent upon the Act itself; rather, we read § 414 as preserving causes of action for breaches of duties distinguishable from those created under the Act, as in the case of a contract claim. *Cf. Ivy Broadcasting Co. v. American Tel. & Tel. Co.*, 391 F.2d 486 (2d Cir. 1968); *Kaufman v. Western Union Tel. Co.*, 224 F.2d 723 (5th Cir. 1955), *cert. denied*, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); *O'Brien v. Western Union Tel. Co.*, 113 F.2d 539 (1st Cir. 1940).

1. The fact that Comtronics could have sought a cease and desist order from the FCC under § 205 does not alter the analysis. Because the FCC has limited resources and myriad of regulatory responsibilities, it is not likely that Comtronics could have secured instant relief. More significantly, it is quite possible that there will

The court seems to recognize that the creation of a private damages remedy would eliminate the enforcement problem, but it believes that Congress has precluded the creation of such actions. Unlike the majority, I see no evidence of "an explicit [legislative] purpose to *deny* such cause of action." *Cort v. Ash,* 422 U.S. 66, 82, 95 S.Ct. 2080, 2090, 45 L.Ed.2d 26 (1975), and I believe such a remedy would be consistent with the statutory scheme.

For present purposes, I am willing to assume that Congress intended that §§ 206–07 should not apply to connecting carriers. However, it does not follow that Congress specifically intended that connecting carriers should be immune from damages liability under *each and every* statutory provision. All that can reasonably be inferred from Congress' decision to exempt connecting carriers from §§ 206–07 is that Congress did not want to subject connecting carriers to the automatic, across-the-board damages liability of common carriers. Whether there is to be a private right of action under any of the specific provisions seemingly has been left to judicial determination. Since I see nothing in the legislative history which is to the contrary[2] and can perceive no regulatory objective or substantial value which will be interfered with if private damages actions were allowed under § 203 alone,[3] I think the inferral of this damages remedy is consistent with the

"evident legislative intent". Because this remedy, in my view, is necessary to protect the primary legislative objectives and since there are not other considerations counseling against the creation of such a remedial right, *see Cort v. Ash, supra* at 78, 95 S.Ct. 2080, this is an appropriate case for the exercise of the very respectable judicial practice—evidenced by literally scores of cases—of implying a private right of action under a statute which does not expressly provide for one. I would reverse the judgment of the district court.

## ON PETITION FOR REHEARING AND CLARIFICATION

 In its petition for rehearing and for clarification, Comtronics argues first that our assumption that PRTC is a "connecting carrier" is premature inasmuch as discovery is necessary to determine whether PRTC is exempted from all but §§ 201–05 as a

"carrier engaged in interstate . . . communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with such carrier". 47 U.S.C. § 152(b)(2).

But we do not think that the determinative question is whether the *facilities* through which interstate commerce is conducted are

---

also be instances in which the likely financial advantage from the continuation of the violation will also exceed the maximum penalties for violating the cease and desist order.

2. The history the majority relies upon is less than compelling. Although Congress demonstrated solicitude for the financially weaker connecting carriers, it made them subject to §§ 201–05, and there is no indication that Congress felt that connecting carriers should be given a carte blanche to violate the procedures for having their tariffs amended. Representative Rayburn's statement during floor debate obviously recognizes the applicability of § 202(c) to connecting carriers. It also notes that such carriers are subject to §§ 201–05, but not to other provisions. But it is not addressed to the problem of what happens when such a carrier violates a key provision, like § 203, to which the carrier is subject.

3. Lest there be any doubt that I would take seriously the Congressional solicitude for the financially weaker connecting carriers, I would be strongly disinclined to imply a damages action under § 201 of the Act, which proscribes "unjust and unreasonable practices". Because any carrier practice can be so characterized, permitting such actions against connecting carriers could subject them to numerous lawsuits which would not arise from the carriers' intentional, unlawful conduct. The defense of these lawsuits would place an enormous strain on the connecting carriers even in instances in which the carriers' conduct was blameless, and for this reason my tentative feeling is that a damages remedy under § 201 would be inconsistent with the statutory scheme. In contrast, a connecting carrier can easily avoid subjecting itself to suit under § 203 simply by following the prescribed procedure.

under common control. *See* Brief of Comtronics at 40; Petition for Rehearing and for Clarification at 3. The correct reading of § 152(b)(2) seems to be that the "not directly" language modifies "carrier", i.e. a connecting carrier is one which has a fully independent identity. If the language modified "facilities", then "facilities" would "control" another carrier—an incomprehensible construction. The focus of the section is not on the joint control of facilities but on joint control of carriers. Such a reading is consistent with the legislative history which indicates concern for exempting small, *independent* telephone companies from most of the Act's strictures. As Comtronics stated in its complaint that PRTC "is a wholly owned subsidiary of the Telephone Authority of Puerto Rico . . . which in turn is a corporate public instrumentality of the Commonwealth of Puerto Rico", we think it reasonable to assume that PRTC is a "connecting carrier" under § 152(b)(2).

This understanding is reinforced by the fact that the district court's opinion was expressly based on the assumption that PRTC is a "connecting carrier", and Comtronics' argument on appeal accepted this premise with the exception of two passing sentences at the beginning of page 40 of its brief. The issue was never raised and addressed frontally on appeal. *See also Puerto Rico Telephone Co. v. FCC*, 553 F.2d 694 (1st Cir., 1977).