719 F.2d 89
 FORT MILL TELEPHONE COMPANY, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
Southern Bell Telephone and Telegraph Company and Heritage
Village Church and Missionary Fellowship, Intervenors.
SOUTH CAROLINA PUBLIC SERVICE COMMISSION, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
Southern Bell Telephone and Telegraph Company and Heritage
Village Church, and Missionary Fellowship, Intervenors.
 Nos. 82-1255, 82-1301.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 7, 1983.
Decided Oct. 18, 1983.
 
 Thomas J. O'Reilly, Washington, D.C. (Veronica M. Ahern, Chadbourne, Parke, Whiteside & Wolff, Washington, D.C., on brief), Arthur G. Fusco, Columbia, S.C. (Cheryl Ann Walker Davis, C. Dukes Scott, Columbia, S.C., Robert R. Carpenter, Roddey, Carpenter & White, Rock Hill, N.C., on brief), for petitioners.
 Jane E. Mago, Washington, D.C. (Stephen A. Sharp, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, John E. Ingle, Deputy Associate Gen. Counsel, William F. Baxter, Asst. Atty. Gen., Barry M. Grossman, Stephen F. Ross, U.S. Dept. of Justice, Washington, D.C., on brief), for respondents.
 William F. Austin, Austin & Lewis, Columbia, S.C. (William Joseph Bruckner, Omaha, Neb., Thomas C. Cartwright, Robert W. Sterrett, Jr., Atlanta, Ga., on brief), for intervenor Southern Bell Tel. and Tel. Co.
 Before WIDENER, PHILLIPS and MURNAGHAN, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Fort Mill Telephone Co. (Fort Mill) seeks review of an order of the Federal Communications Commission (FCC) upholding the decision of Heritage Village Church and Missionary Fellowship, Inc. (Heritage)[1] to interconnect its customer provided terminal equipment[2] to Southern Bell Telephone and Telegraph (Southern Bell) of North Carolina instead of Fort Mill of South Carolina. We affirm.
 
 
 2
 Heritage operates a Total Living Center including an administrative complex, television broadcasting and production facilities, guest chalets, residential and semi-permanent facilities, and recreational facilities. While Heritage is officially headquartered in Charlotte, North Carolina, the Total Living Center is located on 1050 acres[3] that straddle the North Carolina/South Carolina border. This property is in one parcel and not traversed by any public road or thoroughfare.
 
 
 3
 Because Heritage's property is located in two States, it may be served by two different telephone companies. The first, Fort Mill, is an independent telephone company certified to serve the area in South Carolina where the complex is located; the other, Southern Bell, is certified to serve the North Carolina side of the complex. Primarily in order to maintain its established identity with the City of Charlotte, but also because of economic, technical, and religious reasons, Heritage chose to locate its privately owned PBX on its North Carolina property within Southern Bell's exchange area so that it could interconnect with Southern Bell's network in North Carolina. The complex's phone system, consisting of approximately 300 telephones, is presently served from this switching equipment located on the North Carolina side of the complex.[4] Heritage purchased this switching equipment from NEC Telephones, and all agree that it complies with federal regulations and thus can be interconnected into the telephone network. Southern Bell now provides Heritage with 40 exchange trunk lines and 5 interstate WATS lines. Heritage's privately owned telephones are located on the South Carolina side of the property and connect to the PBX switching equipment by wiring provided and installed by Heritage.
 
 
 4
 Fort Mill, unhappy with Heritage's telephone arrangement, petitioned the South Carolina Public Service Commission (SCPSC) to require Heritage to interconnect with it instead of Southern Bell. That Commission determined that the controlling factor was the location of the use of the telephone service (South Carolina) and not the location of delivery of the service (North Carolina). It therefore concluded that Southern Bell was furnishing telephone service within Fort Mill's certified area in South Carolina without a certificate. Southern Bell was ordered to discontinue service to Heritage, and Heritage and Fort Mill were ordered to develop a plan of service to be provided by Fort Mill.
 
 
 5
 Heritage then filed a petition for emergency relief with the FCC. In its interim opinion the FCC found that Heritage chose to locate its PBX switch in North Carolina instead of South Carolina because of its community of interest with Charlotte as well as for economic, technical and religious reasons. The FCC then concluded that the SCPSC's order requiring Southern Bell to discontinue service to Heritage interfered with Heritage's right to interconnect its privately owned terminal equipment as it found privately beneficial without being publicly detrimental. The FCC placed the burden on Fort Mill to show Heritage's interconnection with Southern Bell would result in "direct, substantial and immediate injury to its telephone system and detriment to the public interest" and that the public detriment outweighed the private benefit to Heritage.
 
 
 6
 In its final order the FCC framed the issue to be decided as "whether a subscriber with a single premises in North Carolina and South Carolina, having installed the PBX in North Carolina, may insist upon connection of this PBX to the national telephone network in North Carolina." The FCC resolved this question in Heritage's favor. It found that a customer is entitled to interconnect its PBX switching equipment with the carrier serving the location at which the customer chose to locate the PBX.[5] Heritage, having chosen to locate its PBX common equipment in North Carolina, has a federal right to interconnect its equipment there.
 
 
 7
 Congress established the FCC to regulate all "interstate and foreign communication by wire" including the "transmission of writing, signs, signals, pictures and sounds of all kinds by aid of wire ... including all instrumentalities, facilities, apparatus, and services ... incidental to such transmission." 47 U.S.C. Secs. 152(a), 153(a). The FCC's Congressionally mandated goal is to provide for "rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges...." 47 U.S.C. Sec. 151.
 
 
 8
 In a case such as the one here, the scope of judicial review of a decision of an administrative agency is limited by the Administrative Procedure Act to determining whether the agency acted within its authority and complied with its prescribed procedures and whether its action was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. Sec. 706(2); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-417, 91 S.Ct. 814, 823-824, 28 L.Ed.2d 136 (1971). This court must give deference both to the agency's decision if supported by a rational basis in the record, American Meat Inst. v. Dept. of Agriculture, 646 F.2d 125, 127 (4th Cir.1981), and the agency's interpretation of its own statute and regulations. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). A court may not substitute its own reasoning for that of the agency. SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947). It can, however, affirm a less than clear administrative opinion when the agency's reasoning is reasonably discernible. Bowman Transportation, Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 286, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974).
 
 
 9
 Keeping in mind our limited scope of review, we find that the FCC acted within its authority in upholding Heritage's decision to interconnect its phone equipment with Southern Bell.[6] Further finding that this action was neither arbitrary nor capricious, an abuse of discretion, nor otherwise not in accordance with law, we affirm.[7]
 
 
 10
 Since the Hush-A-Phone case[8] was decided in the late 1950's, it has been the law that a telephone subscriber has a federal right to use his telephone equipment in ways that are "privately beneficial without being publicly detrimental." 238 F.2d at 269. In the NCUC cases this court concluded that the FCC, not state regulatory commissions, had the statutory authority to regulate terminal equipment used for both interstate and intrastate communications. NCUC I and II upheld the FCC's ruling that subscribers have a federal right to interconnect their telephone equipment into the telephone network.[9]
 
 
 11
 Heritage owns contiguous property in North and South Carolina. It has the right to locate its switching equipment wherever it chooses on its own property.[10] We agree with the FCC that the customer is entitled to interconnect PBX equipment with the facilities of the carrier which serves the location at which the customer has chosen to place the PBX. The customer has chosen to place its PBX in North Carolina, which we hold it has the right to do.
 
 
 12
 The SCPSC's ruling interferes with the very right of a customer to interconnect his equipment with the interstate telephone network, which this court and the FCC have consistently upheld. As well, it runs counter to federal policy on subscribers' choice: "The federal policy governing such circumstances, flowing from our rules[,] the applicable interstate tariffs, and our prior decisions, is that the customer is entitled to interconnect PBX equipment with the facilities of the carrier which serves the location at which the customer has chosen to place the PBX."[11]
 
 
 13
 Because we agree that the decision of SCPSC interferes with Heritage's right to interconnect its equipment to the interstate telephone system, and is contrary to the federal policy on subscriber's choice, the decision of the FCC is
 
 AFFIRMED.[12]
 
 
 [1]
 Also known as the PTL Club
 
 
 [2]
 A PBX (private branch exchange) system like the one here consists of common equipment (a switchboard or switching equipment), remotely located station equipment (such as telephones) and wiring connecting the two. It is the point of delivery (i.e. the point of connection) to which the interstate tariffs refer, not the point of telephone use. Thus it is the point at which the PBX is connected into the interstate system that is involved here
 
 
 [3]
 Approximately 1000 acres of the land is located in South Carolina, with the remaining 50 in North Carolina
 
 
 [4]
 Heritage has sought some additional telephone service from Fort Mill such as 5 to 10 PBX exchange trunks, pay telephones, residential trailer telephone service, and the like
 
 
 [5]
 The FCC rejected the SCPSC's conclusion that the point of use dictates, and found instead that the determining factor is the point of delivery or connection
 
 
 [6]
 We find no merit to Fort Mill's contention that the FCC lacks jurisdiction to decide this matter because of Secs. 2(b) and 221(b) of the Communications Act. 47 U.S.C. Secs. 152(b) and 221(b). That issue was resolved in the FCC's favor by this court in North Carolina Utilities Commission v. FCC, 537 F.2d 787 (4th Cir.), cert. den. 429 U.S. 1027, 97 S.Ct. 651, 50 L.Ed.2d 631 (1976), and North Carolina Utilities Commission v. FCC, 552 F.2d 1036 (4th Cir.), cert. den. 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977)
 
 
 [7]
 No question is raised as to rule or procedural violation
 
 
 [8]
 Hush-A-Phone Corp. v. United States, 238 F.2d 266 (D.C.Cir.1956)
 
 
 [9]
 Accord: Puerto Rico Telephone Co. v. FCC, 553 F.2d 694 (1st Cir.1977); American Telegraph & Telephone Co., 71 FCC2d 1 (1979)
 
 
 [10]
 We are not dealing with a case in which the subscriber is guilty of any sort of fraud in the location of his equipment
 
 
 [11]
 FCC slip opinion, p. 5
 
 
 [12]
 While the FCC did not specifically discuss the issue of public harm in its final opinion, a complete reading of the decision reveals that it rejected the general allegations of harm raised by Fort Mill